## E. T. BROWNING v. NORTH MISSOURI CENTRAL RAILWAY COMPANY, Appellant.

### In Banc, October 1, 1920.

1. **REFERENCE: Discretion of Trial Court.** The discretion of the trial court in ordering a reference is reviewable in the appellate court.

2. **———: Long Account: Denial of Jury Trial.** Even though the items sued on constitute items of account, yet if the account stated is susceptible of easy calculation and computation by a jury it cannot be referred over the objection and protest of defendant. The statute providing for reference of a case involving long accounts is an exception to the right of trial by jury, and should not be extended to apply to any case unless it clearly appears to fall within its letter and spirit. [Following Ice Co. v. Tamm, 138 Mo. 1. c. 389-90.]

Appeal from St. Louis City Circuit Court.—*Hon. M. Hartman,* Judge.

REVERSED AND REMANDED.

*Charles G. Revelle* and *N. T. Gentry* for appellant.

(1) The court erred in denying the defendant its right to a jury trial and in compulsorily referring the cause to a referee. (a) The primary purpose of this action is to obtain damages and such actions cannot be compulsorily referred. Reed v. Young, 248 Mo. 606;

Elks Investment Co. v. Jones, 187 S. W. 71; Martin v. Hall, 26 Mo. 389; Robinson v. N. Y. Railroad Co., 12 N. Y. St. 66, 109 N. Y. 658. (b) Demands arising from breach of contract, however numerous and though separately itemized, do not constitute an account. Reed v. Young, 248 Mo. 606; Tunison v. Snover, 56 N. J. L. 41; Telephone Co. v. Bickford, 142 N. Y. 224; Morrison v. Benthuysen, 103 N. Y. 675; Andrews v. Insurance Co., 73 Wis. 642; Ice Co. v. Tamm, 138 Mo. 385; Wiley v. Logan, 96 N. C. 510; 34 Cyc. 782. (c) Where the substantial issue involved is fraud a reference cannot be ordered. Morrison v. Horrucks, 40 Hun. (N. Y.) 428; Freeman v. Insurance Co., 13 App. P. R. (N. Y.) 124. (d) Where there is but one principal transaction, as where services are all performed under one contract, a long account is not involved. Russell v. McDonald, 425 App. Div. 844; Smith v. Assurance Corp., 114 N. Y. App. Div. 868. (e) In order to authorize a reference, the account must be directly and not merely collaterally or incidentally involved; in other words, the account must be the primary object of the action. Doyle v. Railway Co., 136 N. Y. 505; Kamp v. Ingersoll, 86 N. Y. 433; Lumber Co. v. Bernard, 131 Wis. 284; 34 Cyc. 785; Aronin v. Casualty Co., 54 Misc. (N. Y.) 630. (f) The terms "examining a long account" are used in the statute in the sense in which they are ordinarily understood, and do not imply an account stated or a bill of particulars, but refers to a series of charges made at various times covering many transactions between the parties, or to an account kept by one party or the other—a series of charges made at various times as the transactions occurred. Reed v. Young, 248 Mo. 616; Ice Co. v. Tamm, 138 Mo. 385; Whitwell v. Willard, 1 Metc. 216; Investment Co. v. Jones, 187 S. W. 75; Ittner v. Exposition Assn., 97 Mo. 385; 34 Cyc. 782. (g) Even if the present case involved the examination of a long account, the real issues framed by the answer and reply are such that if the defense prevailed upon the issues tendered by the answer, plaintiff's cause would fail. The general rule

is that where there is an issue, the determination of which may render an accounting unnecessary, a reference should not be ordered until such issue is decided and an accounting found necessary. Malone v. Church, 172 N. Y. 269; Duckworth v. Duckworth, 144 N. C. 620; Reagers v. Chappelear, 104 Vt. 44. (h) Even if it could be said that the demands sued upon amount to an account, they do not constitute a long account. Ice Co. v. Tamm, 138 Mo. 385. (i) The contract was conditional and never became operative.

*Fauntleroy, Cullen & Hay* and *Ralph T. Finley* for respondent.

The court did not err in holding that this is a case for compulsory reference. (1) The pleadings and evidence in this case show conclusively that the determination of the issues involves the examination of a long account. Ittner v. St. Louis Exposition Assn., 97 Mo. 567; Lumber Co. v. Stoddard Co., 113 Mo. App. 317; Phillips v. Todd, 180 S. W. 1039; Smith v. Haley, 41 Mo. App. 611; Reifschneider v. Beck, 148 Mo. App. 725; State v. Railroad, 24 Ill. 188; R. S. 1909, sec. 1996. (2) The mere fact that the action is for breach of contract does not prevent a reference, provided the items are proper charges of account under the contract. Craig v. Furniture Co., 187 S. W. 797; Valleroy v. Enright, 179 Mo. App. 556; St. Louis v. Parker-Washington Co., 271 Mo. 229; State ex rel. v. Reynolds, 245 Mo. 689; Chicago & N. W. Ry. Co. v. Faist, 87 Wis. 360, 58 N. W. 745. (3) Compulsory reference is not error as to matters not constituting a good defense or as to which proof failed. Arensmeyer v. Ins. Co., 254 Mo. 380; Dee v. Nachbar, 207 Mo. 680; R. S. 1909, sec. 2082.

GRAVES, J.—This is an action for a breach of a contract. Both sides so denominate it. The first count alleges a contract between plaintiff and defendant by the terms of which plaintiff was to furnish to defendant

certain railroad ties, and poles for its proposed electric railroad from Mexico, Missouri to North Jefferson, Missouri. With the views that we have of the case the fuller details of the contract will serve no good purpose. Nor are the subsequent agreed modifications of the contract, as alleged, material for our disposition of the case. Suffice it to say in this count of the petition the plaintiff charges:

"Plaintiff now shows to the court that as his duty was under said contract he delivered to the defendant on defendant's right-of-way on or before the 1st day of May, 1910, 3474 No. 1 ties of the kind and character in said specifications mentioned and 421 No. 2 ties of the kind and character in said specifications mentioned, whereby defendant became indebted to him in the sum of $2489.65, for which on the 4th day of May, 1910, defendant executed and delivered to him an acceptance, a copy of which is herewith filed, marked 'Exhibit D,' and made a part of this petition.

"That on or before the 30th day of June, 1910, plaintiff under and by virtue of the terms of said contract, delivered to the defendant on defendant's right-of-way 4638 No. 1 ties and 400 No. 2 ties of the dimensions and character described in said specifications, whereby defendant became indebted to plaintiff in the further sum of $3234.70, for which defendant executed and delivered to plaintiff acceptances of date July 7, 1910, copies of which are hereto attached, marked respectively 'Exhibit E' and 'Exhibit F,' and made a part hereof.

"That on or before June 30, 1910, under and by virtue of the terms of said contract, plaintiff delivered to defendant in the Town of Columbia, Missouri, 1011 No. 1 ties and 76 No. 2 ties of the kind and character required in the specifications attached to said contract, whereby defendant became indebted to the plaintiff in the further sum of $731.56, and for which defendant executed and delivered to plaintiff an acceptance of date July, 7, 1910, a copy of which is herewith filed and marked 'Exhibit G' and made a part of this petition.

"That on or before July 31, 1910, under and by virtue of the terms of said contract, plaintiff delivered to defendant at Columbia, Missouri, 1478 No. 1 ties and 147 No. 2 ties of the kind and character contracted for by defendant, for which defendant became indebted to plaintiff in the further sum of $1090.30, for which defendant executed and delivered to plaintiff acceptances of date of July 12, 1910, and July 16, 1910, copies of which are herewith filed, marked 'Exhibit H' and 'Exhibit I,' and made a part hereof.

"That on or before September 20, 1910, under and by virtue of the terms of said contract, plaintiff delivered to defendant on various points on defendant's right-of-way 11,473 No. 1 cross-ties of the kind and character contracted for by the defendant, for which defendant then and there became indebted to plaintiff, and bound to pay him at the rate of sixty-five cents for each tie; and on or before the same day plaintiff delivered to defendant, on defendant's right-of-way 1,882 No. 2 cross ties of the kind contracted for, for which defendant then and there became indebted to plaintiff in the sum of fifty-five cents for each tie, amounting in the aggregate to $8532.55; that defendant has refused to inspect or accept said ties and that said ties are worth at the nearest market point forty-five cents for the No. 1 ties and twenty-two cents for the No. 2 ties, and that it will cost plaintiff $2374.64 to remove said cross ties from said right-of-way to such nearest market point and the plaintiff shows to the court that the greatest sum that he can realize upon the sale of said ties at the nearest market points is $3202.25, which being subtracted from the contract price agreed to be paid to plaintiff by defendant, leaves due him as his damage upon said ties, the sum of $5330.30.

"Wherefore plaintiff shows that defendant became indebted to him by reason of the premises for ties delivered and accepted in the sum of $7464.85, and for damages for the ties so delivered, but not inspected or accepted, in the sum of $5287.23.

"That before July 1, 1911, plaintiff could have furnished within the time required by said contract 136,326 cross ties of the kind and character provided for in plaintiff's contract with the defendant and 6074 No. 2 cross ties of the kind and character provided for in plaintiff's contract with defendant, and that plaintiff was then and there and at all times able, ready and willing to deliver the same, but that defendant stopped and prevented the delivery thereof, as will more fully hereinafter appear, and plaintiff shows to the court that the market values of said ties at the nearest market points are, to-wit, forty-five cents per tie for No. 1 ties and twenty-two cents per tie for No. 2 ties, for which price the plaintiff could have furnished said ties, and that plaintiff will lose in the sale of said ties the difference between the cost of furnishing and delivering the same to defendant, to-wit, the sum of $29,269.62.

"That before July 1, 1911, plaintiff could have procured and furnished to the defendant, under and by virtue of his said contract and supplements thereto, in order to fulfill the same, twenty-five hundred cedar poles, of the dimensions of seven inches at the small end by forty feet in length, and of the kind and character mentioned in plaintiff's contract with the defendant, for which defendant had agreed and had become bound to pay plaintiff the sum of $7.35 each, and five hundred Northern Cedar poles, of the dimensions of six inches in diameter at the small end by thirty feet in length, and of the kind and character in plaintiff's contract mentioned, for which defendant promised and became bound to pay plaintiff the sum of $2.35 per pole; that the larger poles could have been furnished by the plaintiff at the cost to him of $6.35 per pole, and that the said smaller poles could have been furnished by the plaintiff at the price of $2.30 each; that the defendant has refused to accept said poles, although they comply with the poles contracted for between plaintiff and defendant in every respect.

"Wherefore plaintiff shows to the court that he has suffered damage in the sum of $1,825, because of the

refusal of defendant to carry out its contract with him with reference to said poles.

"That before July 1, 1911, plaintiff could have furnished for future delivery to the defendant, under and by virtue of said contract, fifteen sets of switch ties, amounting to $1236 in the aggregate; that defendant has refused to accept said switch ties, and that the cost to plaintiff of procuring and delivering said switch ties to the defendant would have been five cents per lineal foot and no more; and plaintiff shows to the court that he has suffered damage in the sum of $766.03 by reason of the failure of defendant to accept said switch ties."

Following the foregoing are the alleged breaches of the contract, and a prayer for a judgment under this count of $45,897.44, with interest thereon at six per cent from 28th of September, 1910. Such is the first count.

By the second count plaintiff avers that he deposited with defendant in trust and to insure his good faith in carrying out the contract, the sum of $500, and he asks judgment for this sum, with accrued interest, alleging breaches of contract by defendant.

The third count is an action for money advanced to defendant in the aggregate of $784.75, made up of nine specific items, giving the dates of each.

Over the objections and protests of the defendant the trial court ordered a reference in the case. The answer filed by defendant in no wise aids the trial court in the matter of compulsory reference, but there may be some matters therein which may be adverse to that action, and may be relevant in determining the question of the courts right to refer the case. If so, they can be noted in the course of the opinion.

It should be noted that in the first count, there are five items of accepted ties, two items of non-accepted ties (with the claim for damages for the refusal to accept), and the remainder are three claims for damages (1) upon ties that he could have furnished, (2) for poles that he could have furnished, and (3) for switch ties that he could have furnished.

As said the answer in this case in no way adds to the length or intricacy of the account presented by the plaintiff. It challenges (1) the validity of the alleged contract, (2) the validity of the alleged ratification of the alleged contract, by averring that such ratification was procured by fraud, (3) misjoinder, (4) other facts putting in issue the liability for ties alleged to have been delivered. So runs the defense to the first count. We may not have them in full, but enough to show that they contest the right to recovery and do not add to the account. So also as to the answer to the second and third counts of the petition.

The few items under the first and second counts of the petition arise out of the alleged breaches of the contract pleaded. For the purposes of this case we need not stop to consider whether or not such items, so arising, are items of ''long account'' as contemplated in the compulsory reference laws, Section 1996, Revised Statutes 1909. We may concede that these few items come within the terms of the statute and that they are items of an account between the parties. But with this concession the troubles of plaintiff are not dissipated. The case must fall within the spirit as well as the letter of the reference law, before a person can be deprived of his right to a trial by jury. The discretion of the trial court in ordering a reference is reviewable here. [Ice Co. v. Tamm, 138 Mo. l. c. 389-90.]

The case of Ice Co. v. Tamm, supra, is a clear ruling on such an account as we have before us in the present case. In that case (138 Mo. l. c. 392) we have set out the account involved. It is as intricate and practically as long as the one set out in the petition in our present case. We ruled that it was not such a long account as to be within the meaning of the reference law. We closed that case by saying:

''No case in this court is a precedent for holding a case so simple in its nature and so susceptible of easy calculation and computation by a jury as falling within the spirit of Section 2138. Certainly the whole issue

could have been tried by a jury in a short time without any unnecessary delay or complication.

"As the statute itself is an exception to the right of trial by jury we shall not extend it by loose construction. On the contrary a case should clearly appear to fall within the letter and principle of the exception before a party can be deprived of his jury trial. For this error alone the judgment is reversed and the cause remanded for trial in the circuit court."

The reference in the instant case cannot stand, without overruling the Tamm case. In our judgment we should not overrule that case. It is sound in principle. So that even if we concede that the items sued for by the plaintiff constitute items of an account, yet the account stated is not so long or intricate as to bring it within the letter or spirit of the compulsory reference law.

Defendant was entitled to a jury trial in this case, and for the error committed in sending the case to a referee, the judgment is reversed and the cause remanded. All concur, except *Woodson, J.,* absent.