HOME EXCHANGE BANK v. GEORGE B. KOCH and AETNA ACCIDENT &
LIABILITY COMPANY, Appellants.—32 S. W. (2d) 86.

Division Two, October 13, 1930.

*Dudley & Brandom, Scott J. Miller* and *Stringfellow & Garvey* for appellants.

*Davis & Davis* and *Davis & Ashby* for respondent.

WHITE, J.—Action on a bank official's bond.

Defendant George B. Koch, March 16, 1916, was cashier of the People's Exchange Bank at Jamesport, in Daviess County. Later he was elected president of that bank and continued as such until in January, 1925. It is alleged and the proof shows that during all that time he was the managing officer in charge of said bank and had direct supervision and control of the bank employees.

On October 26, 1916, Koch executed a bond with the defendant Aetna Accident & Liability Insurance Company as surety, in the sum of ten thousand dollars, conditioned that Koch would faithfully perform the duties to which he had been elected or should thereafter be elected, reelected, appointed or reappointed; or of any other office to which he might be appointed or reappointed, elected or reelected, or temporarily assigned, the surety agreeing, "to hold said People's Bank harmless from any loss occasioned by any act or acts of larceny, embezzlement, fraud, dishonesty, forgery, theft,

wrongful abstraction or wilful misapplication committed by said George B. Koch, employee of said People's Exchange Bank of Jamesport, directly or through connivance with others, until his [said Koch's] accounts with said bank have been fully settled and satisfied."

The People's Exchange Bank of Jamesport continued in business as a banking house until in January, 1925, when by action of its board of directors it suspended business and placed its affairs in the control of the Commissioner of Finance of the State. The Commissioner of Finance through deputies went into immediate possession and continued in exclusive possession of the assets of said bank until June 6, 1925, when the assets were sold and the plaintiff, Home Exchange Bank, purchased them, including the cause of action sued on.

The petition alleged eight wrongful acts of the defendant Koch while an officer of said People's Bank and while the said bond was in force, each of which wrongful acts caused loss to the said People's Bank.

The second of said charges was dismissed before or during the trial.

The seven remaining charges are briefly designated by appellant, as follows:

"Charge 1, The Kansas Farm transaction.
"Charge 3, The F. N. Forth note.
"Charge 4, The Musselman notes.
"Charge 5, The Carlow Bank—B. F. Ware Corn Deal.
"Charge 6, The M. E. Johnson $2,000 note.
"Charge 7, The Nickell time-certificate.
"Charge 8, The Liberty Bond account."

Evidence was presented upon the seven charges before a jury in the Circuit Court of Livingston County, who, May 20, 1927, returned a verdict for the full face of the bond with interest at six per cent, amounting to $11,031.54. From the judgment rendered the defendants appealed.

I. The defendants first filed a motion to have the case referred; the motion was overruled, and error is assigned to the rulings. The first clause of Section 1426, Revised Statutes 1919, declares that a compulsory reference may be had "where the trial of an issue of fact shall require the examination of a long account on either side."

Reference is made by appellants to Smith v. Ohio Millers Mut. Fire Ins. Co., 320 Mo. 146, 6 S. W. (2d) 920. In that case we held that a compulsory reference was error because the *correctness* of the account involved was not for determination. It is claimed that in this case the correctness of the account on each charge is for determination. It is also held in a leading case cited by appellants,

Browning v. North Mo. Cent. Ry. Co., 284 Mo. 439, l. c. 446, that a case ''must fall within the spirit as well as the letter of the reference law, before a person can be deprived of his right to a trial by jury.''.

There is nothing on the face of the petition to show that a ''long account'' is required to be examined. The use of the word ''may'' in that statute carries discretion to the trial court in directing a compulsory reference although in some cases cited it is held that such discretion may be reviewed by this court. The complaint is that in certain specific instances the defendant Koch gave himself credit for sums on the books of the bank to which he was not entitled, that he abstracted from the assets of the bank certain notes and other securities, and that he caused fraudulent paper to be listed as assets of the bank and thereby got credit for sums to which he was not entitled. None of these charges indicates the necessary examination of a long account. We do not find error in the over-ruling of appellant's motion for reference.

II. Defendants filed a separate demurrer to the evidence as to each of the seven charges, which demurrers were overruled and error is assigned to the ruling on each. These were treated as withdrawal instructions. We find on examination of the record that the trial court committed no error in refusing to allow any one of them.

We find a submissible case was made out on each of the seven charges.

III. As to the first charge Mr. F. A. Guiles testified as follows: ''I have been a state bank examiner for three years. I did not make the examination of the People's Exchange Bank. I was present at the directors' meeting January 28, 1925, and at its close the board of directors turned the bank over to me and I took charge of it. Thereafter I made an examination of the bank and its condition and made a report of my findings. Assisted by Mr. Koch for three days, I made an inventory of the items of resources of the bank. I spent two weeks in completing the inventory. . . .

''The books showed a deposit of $10,000 to George B. Koch's credit on September 14, 1916. The account due from banks was raised $10,000, and I was unable to find any remittance record or any advice of any credits as to where that $10,000 item came from. The only thing I could find in the books to show whether any fund, cash or money actually went into the bank to offset that credit was the increase of $10,000 in money due from banks, but nothing to substantiate that entry. I examined the account called 'due from other banks' and the daily statement showed an actual increase

of $10,000 in that account. I was unable to find where there was any remittance to other banks of that date, offsetting the $10,000 deposit. I did not interview Mr. Koch himself about that particular account. I tried to get Mr. Koch to the bank to explain different items, and Koch refused to come. The $10,000 credited to Koch's account was checked out in the regular course of business.''

The defendants on cross-examination of the witness attempted to show some connection between that account and a Kansas farm conveyed by Koch to the People's Exchange Bank. That farm transaction was mixed up with certain notes and the whole matter quite confusing. It is claimed by plaintiff that some notes and entries in respect to it were fictitious. According to Mr. Guiles there was no necessary connection between the conveyance to the bank of a Kansas farm and the $10,000 credit. Several witnesses for plaintiff. including Mr. Noll, certified public accountant and Mr. J. Ed Tye, one of the directors of the bank, were cross-examined on the point, but none of them offered any conclusive explanation of the item which would exculpate Koch. Mr. Koch himself did not testify nor offer any explanation of that matter.

It was a question for the jury as to whether the bank lost by the transaction.

IV. Regarding charge 3, Mr. Guiles testified that there was a credit to Koch's personal account of $3500, and among the assets was a note of the same date due from F. N. Forth for $3500. Mr. Guiles said that Koch told him there was no such person as F. N. Forth; that it was a dummy note. On this charge defendants attempted to account for the credit of $3500 by showing the purchase of furniture by Koch. They also attempted to show that Koch drew a check on his personal account to the order of Tootle-Lemon National Bank for $2500, and that the money somehow got into the People's Exchange Bank. The evidence is not at all conclusive that any such sum got into the People's Bank by reason of that check. Again on that charge Koch did not testify or attempt to explain the transaction. It was a question for the jury whether the bank lost by the credit of $3500.

V. On the fourth charge the evidence shows that the Jamesport International Motor Truck Sales Company was a partnership com-posed of Homer Musselman and George B. Koch, that June 17, 1922, that company made a note for four thousand dollars, received credit for it, and used the money in the partnership business. Later the firm name was changed to Musselman Motor Company. Musselman and Koch were the company, and in July, 1923, they executed four notes of one thousand dollars each to replace the four-thousand-dollar note. Koch

is charged with extracting these four notes; he told Guiles that he had taken the four Musselman notes out of the note case and in lieu thereof he had put in the note signed by W. C. Pogue for $4500. The four Musselman notes were not in the note case at the time, but the Pogue note was, and the $4500 note was required to make the notes account balance. The Pogue note had been sold to M. E. Johnson and was placed among Johnson's papers in the bank. Here again was an attempt by defendants to connect or confuse this with other transactions, but no conclusive evidence to rebut the proof of loss to be inferred from the evidence stated. It was clearly a question for the jury to determine whether any consideration passed to the bank for the four Musselman notes absorbed by the defendant Koch. Here again Koch declined to testify.

VI. The fifth charge relates to two thousand bushels of corn sold to B. F. Ware for a consideration of $1300, with the agreement that if the corn did not measure up to two thousand bushels Ware was to have credit on the note for the shortage. There was realized from the corn $740, which Ware paid in and his note was surrendered. The balance with interest amounted to $655, which the bank never received. The $1300 had been credited to the personal account of Koch. Appellant claims that this does not come within the term of the bond because it constitutes an item between Koch and the bank, and a loss would not be assigned to that transaction until his accounts with said bank had been fully settled and satisfied. That interpretation would nullify the bond. The condition of the bond quoted does not mean that Koch's account must be fully settled and satisfied before action would accrue on the bond. In that case no action could ever accrue.

It is further claimed that Koch was entitled to compensation for services in liquidating the Carlow Bank from whom the two thousand bushels of corn were obtained. The record of the bank failed to show that he had rendered any service for which he could make such a charge. It is apparent that he was paid salary as an official to render all necessary services to his bank without extra charge. That was a matter for the jury.

VII. The sixth charge related to a note for $2,000 belonging to M. E. Johnson, signed by one W. C. Pogue. Koch admitted to the Bank Commissioner that he signed Johnson's name on the back of the note; therefore, it still belonged to Johnson. It was in the note wallet as an asset of the bank with Koch's forged endorsement of Johnson's name on it. The evidence in relation to it is confusing, but it is clear that the note payable to Johnson belonged to Johnson and did not belong to the bank, and the records of the bank showed a loan on notes for which it was substituted.

It was the only way in which there was any explanation of ·the payment of the original loan. Koch did not testify. It was for the jury to say whether the bank lost two thousand dollars, or any sum, by the action of Koch in that matter.

VIII. The seventh charge concerned a time certificate issued to George K. Nickell for two thousand dollars which shows that he deposited that sum in the bank June 30, 1921. The time certificate showed that amount paid October 28, 1924. It is not carried in the totals on the debit side. It required that amount of two thousand dollars added to the debit side to make the books balance. There is no other time certificate shown for two days after the date shows that was paid. The cash on hand that day and the previous day shows a difference of two thousand dollars. The time certificate was assigned by George K. Nickell to Mrs. M. A. Nickell, his wife. George K. Nickell had been dead four years at the time of the trial and his wife testified that her husband deposited two thousand dollars in the bank and that Mr. Koch transacted the business for Mr. Nickell; that she never got the two thousand dollars on that certificate although it appeared in the files of the bank and was marked paid.

Mr. Guiles testified that Koch told him that he bought bonds with the proceeds of this time certificate. Defendants attempted to show that two thousand dollars in bonds was bought, but these bonds were not delivered to Mrs. Nickell, but delivered to Homer Kessler. There is no conclusive proof that the two thousand dollars which went into the Kessler bonds had anything to do with the time certificate. Mrs. Nickell denied that she received anything from Kessler or that he had anything to do with her time certificate. This is another instance where the explanation was easy if the defendant Koch did not profit by the transaction. He transacted the business, but declined to testify. ˙It was a question for the jury.

VIII. Charge eight was that Koch had exclusive control of the bank's bonds and appropriated $13,650 worth of Liberty Bonds. Mr. Guiles testified that the bond shortage was $25,650. The appellants say in their brief that Mr. Guiles after carefully checking through the bonds found the total amount of bonds to be accounted for was $22,050. There was attempt to account for them by book entries and supposed connection with other persons, but no sufficient proof which the jury were obliged to believe to account for the shortage. Again the surety failed to put Koch on the stand to explain. It was for the jury to say whether the bank lost anything by the bond shortage.

In each of these items the bank books on careful examination showed apparent loss to the bank in connection with a transaction

378

of Koch. In each instance the defendants attempted an explanation by other items and transactions, the validity, good faith and relevancy of which were more or less in question. The bank lost large sums not explained in any other way than as charged. The defendant Koch, respondent asserts and is not contradicted, was in court all during the trial. He did not testify and the Liability Company defendant did not attempt to offer him as a witness. He, of all men, knew exactly how those accounts stood. He had charge of the entire assets and transactions of the bank and could have explained each and every item in dispute.

Defendants proceeded just as if Koch was on trial for the commission of a crime. They claimed that in some instances no proof appeared of profit to Koch by a transaction. That was not necessary. He was in full control of the bank, and any loss through his wrongdoing as stated in the bond created a liability. It would not matter whether he profited by any item of such loss. Nor was it necessary to show that the shortage in each of the instances mentioned was in the exact amount charged. It was only necessary in order to make it a submissible case that the evidence in each instance tended to show that there was some loss. As to each item, at the instance of the defendants the jury was instructed to return a verdict for them unless there was loss and misappropriation as to such item. It was not necessary to prove by direct evidence the agency of Koch in the loss. It could be shown by circumstantial evidence.

The court gave numerous instructions for defendant, of which the following is a sample:

"37. Paragraph No. 2 of plaintiff's petition involving the Kansas Farm Deal, charges defendant Koch with making fictitious deposit of $10,000 and thereby stealing and embezzling $10,000 from the People's Exchange Bank of Jamesport. You are instructed that if you believe from the evidence that defendant Koch checked out the full sum of $10,000 for the benefit of the People's Exchange Bank of Jamesport, in connection with said farm, your verdict will be for defendants on that charge."

Similar instructions were given as to other items.

Those instructions were erroneous, misleading and too favorable to defendants. There could be only one verdict, either for defendants on all the evidence or for plaintiff for the amount of loss to the bank not to exceed the amount of the bond.

The jury, as instructed, found $10,000 loss "occasioned by some act or acts of larceny fraud, embezzlement fraud, forgery, theft, wrongful abstraction or wilful misapplication committed by Koch," etc.

IX. The appellants complain of the admission of certain items of evidence. Evidence was introduced over their objection tending to show that two notes by Hill and Hamilton for six thousand dollars each were paid by the theft of Liberty Bonds. This evidence was introduced in connection with the shortage of Liberty Bonds and was competent for the purpose of showing all the circumstances that had any relation to shortage of the Liberty Bonds owned by or in the custody of the bank. The evidence tends to show that those notes were paid by Koch with three thousand dollars of the bank's money and nine thousand dollars of the bonds belonging to the Liberty Central Trust Company, and that the proceeds of those notes never became a part of the assets of the People's Exchange Bank.

X. Error is further claimed because certain exhibits were introduced in evidence by the plaintiff showing litigation in which M. E. Johnson claimed to be the owner of a $4500 note and a $2,000 note which Koch had placed among the assets of the People's Bank. The exhibit is a decree of court in which it was found that Johnson was the owner of said notes. The only objection to this evidence was that it was incompetent, irrelevant and immaterial as not tending to sustain the charges made in the petition under charges 4 and 6. It was ·relevant and material whether incompetent or not for reasons not advanced.

XI. Error is further assigned to the testimony of Mrs. Rosenthal that she had a loan in Sullivan County which was paid, that she gave a check to Mr. Koch for $3500 and he gave her credit for it on her bank book and that she asked him to order bonds and he promised to do so. She testified to those facts in chief, was cross-examined at length by defendants' counsel, then examined in redirect by plaintiff's counsel and re-cross-examined by defendants' counsel before any objection was made. After all this evidence was in the defendants moved to strike it out. Thus after the defendants had developed the facts on a cross-examination and recross-examination and failed to develop what was desired, it was too late to entertain a motion to strike it out.

XII. Error is assigned to the action of the court in permitting Mr. Guiles to testify that Koch's building account was an account on the depositor's ledger of the bank. That appeared to be an account to which were deposited funds for the construction of the bank building and an adjoining store building.

Defendant objected to this as a conclusion and not a statement of the fact. The objection on that ground was sustained. Then the question was asked who the checks were payable to, and the witness answered they were payable to self and signed George B. Koch. The question then was, ''Who got the money on them?'' The objection was, ''We object to that,'' which was not sufficiently specific to apprise the trial court of error or to require our review.

XIII. The defendants assign error to the exclusion by the court of a letter from the bank examiner to the Peoples' Exchange Bank and portions of certain reports made by the State Bank Examiner to the Commissioner of Finance. This was excluded by the court as hearsay. The appellants say this evidence was not offered to prove any facts stated by the Bank Examiner in these reports, but for the purpose of showing ''the general knowledge of this Kansas farm which was given to everybody.''

The record does not show that it was offered for that special purpose. Further, even if it were competent for the defendants to show that there was such general knowledge given to everybody it should have been shown by competent evidence the same as any other facts. Defendants in their brief say that they offered no oral testimony, but made their defense by documentary evidence identified by the plaintiff's witnesses. So far as the record shows all the directors and officers of the bank, and others having knowledge of those facts, were available to the defendants and that fact could have been shown by first-hand evidence. We think the record does show the very facts he attempted to show by these exhibits. The jury had to find the bank was short ten thousand dollars through the manipulations of the defendant Koch, as charged in the petition and it didn't matter from what items they drew that inference. While the defendants introduced a large amount of evidence regarding sundry items which tended to confuse the issues, there was no conclusive proof to offset the inference which the jury might draw in each instance of a shortage caused by Koch as set forth in the petition.

The judgment is affirmed. All concur.