C. E. BUCHANAN v. CHARLES H. RECHNER and FRANK I. BUCKINGHAM, Appellants.—62 S. W. (2d) 1071.

Division Two, August 12, 1933.

*Henry S. Conrad, L. E. Durham* and *Hale Houts* for appellants.

*J. M. Johnson, C. W. Prince, James N. Beery* and *Walter A. Raymond* for respondent.

FITZSIMMONS, C.—Defendants appeal from an adverse judgment in the sum of $18,155 upon the verdict of a jury in the Circuit Court of Jackson County at Kansas City.

I. The first complaint of appellants is that the court erred in overruling their application for an order of reference. The whole subject of reference is a matter of discretion. The trial court is not bound in any action at law to make a reference. [Fitzgerald v. Hayward, 50 Mo. 516; Home Exchange Bank of Jamesport v. Koch, 326 Mo. 369, 32 S. W. (2d) 86.] But the trial court's action is subject to review. [Creve Coeur Lake Ice Co. v. Tamm, 138 Mo. 385, 39 S. W. 791.] Whether the trial court abused its discretion in denying a reference should be decided from the pleadings as they were when appellants made application. [McCormick v. City of St. Louis, 166 Mo. 315, 65 S. W. 1038, l. c. 1044.]

The amended petition charged that on December 20, 1920, respondent was the owner of certain installment mortgage notes made by Charles T. and Anna B. Wyatt, on said date totaling $18,000, secured by a deed of trust on property located at 920 Paseo, Kansas City, Missouri, and bearing six per cent interest; that these notes were placed in the custody and keeping of appellants at that time to hold as security for money then owing to appellants by respondent and an additional sum about to be, and which was, loaned by appellants for the use of respondent in the purchase of the Paseo property and a contemporaneous sale thereof to said Charles T. Wyatt; that appellants collected the interest and installments on these notes as they became due until the amount owing by respondent to appellants was fully liquidated and satisfied, at which time respondent became entitled to possession of the notes. The amended petition further charged that appellant Buckingham acted as attorney and agent for respondent in that transaction and also acted as a holder in escrow of all the documents for all parties to the deal and that he connived and conspired with appellant Rechner to wrest from respondent said notes; that both appellants refused to disclose to respondent the amount collected on said notes and denied that respondent had any interest in the notes or in their proceeds, that the proceeds of the notes were collected and appropriated by appellants and that in

638

September, 1922, appellants wrongfully and maliciously converted the notes and their proceeds to their own use. The value of the six notes was placed at $18,000, and actual damages in this amount were prayed. Punitive damages in the sum of $10,000 also were asked. The verdict of the jury did not allow any punitive damages.

Appellants by their amended answer admitted that there were delivered to them the promissory notes totaling $18,000 mentioned in the amended petition and that the interest of respondent in said notes and certain renewals of unpaid balances due thereon, made with the consent and approval of respondent, were held by appellants as security for certain obligations and debts of respondent then existing and thereafter created and that appellants fully discharged the duties devolved upon them in the matter of the disposition of the proceeds realized in the collection of the notes. After making a general denial of all allegations of the amended petition, not expressly admitted, appellants in their answer set up four set-offs against respondent's amended petition. The first item of set-off was a note for the principal sum of $460 dated May 27, 1923, executed by respondent to the order of appellant Rechner. A second item of set-off was a promissory note for the principal sum of $2,075 dated May 5, 1924, executed by respondent and another to the order of John Abrahams, and alleged to be owned by appellant Rechner. The third item of set-off was an indebtedness from respondent to appellant Rechner upon an open account in the sum of $825.27 as shown by an exhibited statement containing eleven items. The last set-off claimed was for $1,200 alleged to be due from respondent to appellant Buchanan, for services rendered in the sale of oil rights in certain lands in Kansas. Finally the answer averred that respondent agreed that appellants jointly or severally should pay each of the claims which the answer sought to set off against him from the proceeds realized by appellants on the six notes totaling $18,000 and the renewals thereof.

Respondent in his amended reply to the amended answer alleged that the first note for $460 had been fully paid and satisfied; that the Abrahams note for $2,075 was purchased by appellant Buchanan for $500, the money of appellant Rechner; that, at the time, Buchanan was the agent of respondent and had been instructed by respondent to seek from the holder of the note a renewal of the same and that appellants, availing themselves of the knowledge and authority given to Buchanan, purchased the note. The reply denied that appellant Buchanan had rendered to respondent services for which a set-off of $1,200 was sought, and also denied that respondent agreed that any or all of the so-called set-off claims should be paid from the proceeds realized by appellants on the mortgage notes totaling $18,000.

The case must fall within the spirit as well as the letter of the reference law (Sec. 976, Mo. Stat. Ann. 1929) before a person can be deprived of his right to a trial by jury. [Browning v. North

Missouri Central Ry. Co., 284 Mo. 439, 224 S. W. 748.] We have compared the length and number of the items in dispute between the parties here with the accounts in other cases in which this court held that a reference was improper. If we should find that the trial court in refusing a reference exercised its discretion to the prejudice of the substantial rights of appellants, we would in effect overrule those other cases. We do not feel warranted in so doing. Leading cases of the class mentioned are Creve Coeur Lake Ice Co. v. Tamm, 138 Mo. 385, 39 S. W. 791; Browning v. North Missouri Central Ry. Co., 284 Mo. 439, 224 S. W. 748. We have examined the many cases cited by appellant and also numerous other cases. The authorities mentioned by appellants were mechanics' lien actions and actions upon surety bonds, involving long accounts. We do not regard them as controlling in this case. Accordingly this assignment of error is ruled against appellants.

 II. The court refused to give an instruction, requested by respondent (plaintiff) for a directed verdict in his behalf. Respondent did not ask the court to give any other instructions on his behalf, not even an instruction on the measure of damages. Appellants charge that the trial court erred in giving the case to the jury without an instruction submitting a state of fact and theory upon which respondent was entitled to recover. Appellant in his brief and argument concedes that this court heretofore has not reversed a judgment upon the ground that the cause was submitted to the jury without an instruction outlining plaintiff's case. But he argues that the trend of decision is toward a rule that a submission without a plaintiff's main instruction should constitute reversible error, and that the complicated nature of the instant case demands the application of such a rule. In answer to this contention, we cite the views expressed by the Supreme Court en Banc in March, 1932, in the case of Luikart v. Miller (Mo.), 48 S. W. (2d) 867, l. c. 870: "Submitting a case of this character to the jury with an instruction for the plaintiff only upon the measure of damages has been condemned by this court several times; yet it has never been held a reversible error. It would be proper for the trial court to require, or to submit as its own, an instruction defining the issue and stating the findings upon which a verdict for plaintiff would be authorized. In a civil case, neither party is obliged to submit instructions, and the court is not required to give instructions. Nondirection is not error. [Morgan v. Mulhall, 214 Mo. 451, 114 S. W. 4; Powell v. Railroad, 255 Mo. 420, l. c. 456, 164 S. W. 628.]"

The foregoing case is peculiarly apt here because it was an action for fraud alleged to have been perpetrated upon the plaintiff by the defendants in a real estate deal. Counsel for the parties were the same as in the instant case. It is true that here respondent went a

step further and did not ask even an instruction on the measure of damages. But we do not feel that this fact should cause us to rule contrary to the latest expression of the Court en Banc. In the case of Ternetz v. St. Louis Lime and Cement Co. (Mo.), 252 S. W. 65, l. c. 70, the Court en Banc in reply to an objection of defendant that no instruction was given indicating the theory of law under which plaintiff could recover, observed: "Appellant's position is untenable. Instructions are not required by the statute to be given in civil cases. The defendant could have asked instructions covering the law of the case, if the plaintiff failed to do so. [Powell v. Railroad, 255 Mo. l. c. 454, 455, 456, 164 S. W. 628; Morgan v. Mulhall, 214 Mo. 451, 114 S. W. 4; Wingfield v. Railroad, 257 Mo. l. c. 359-362, 166 S. W. 1037; Clark v. Hammerle, 27 Mo. l. c. 70, 71.]" Upon the foregoing authorities we rule this assignment of error against appellant.

III. The facts in the case are typical of real estate operations in large cities prior to the depression period beginning in October, 1929. Respondent Buchanan was a trader operating on a small capital. Appellant Rechner was a lender of money needed to put over real estate deals. Appellant Buckingham was a lawyer, skilled in such deals, acting sometimes as a counselor but at other times as a principal participant. All three had offices in the same building in Kansas City, Missouri, Buckingham being next door to Rechner.

Buchanan learned in November, 1920, that the Farm and Home Savings and Loan Association had taken in on foreclosure the Parkview Apartments at 920 Paseo, Kansas City, Missouri, and was willing to sell the property for $50,000 on terms of $10,000 cash and $40,000 purchase-money deed of trust payable in monthly installments of $580 each. Buchanan obtained an option to buy the apartments on these terms, and he then went in search of a person who would take over the deal at a profit to him, Buchanan. E. E. Jones had a relative, Charles T. Wyatt, with whom Buchanan, by the procurement of Jones, made an agreement for the sale of the property for $70,000, representing a gross paper profit of $20,000 over the price asked by the Farm and Home Association. But Wyatt had only $2,000 cash, whereas the Farm and Home Association demanded $10,000 cash. In this emergency, Buchanan went to Buckingham, the lawyer, and soon to Rechner, the money lender. The result was a written agreement dated December 4, 1920, between L. E. Lanier, Buchanan's straw man in the deal, and Wyatt, whereby Lanier contracted to sell and Wyatt to buy the property for $70,000 payable as follows: "$2,000 cash; $40,000 by assumption by Wyatt of the payment of the first deed of trust; $12,000 by a second deed of trust on the apartments payable in sixty monthly installments of $125 each, and a final installment of $4,500; $6,000 by a third deed of trust on the same apartments, payable in four annual installments of $1,000 each, and

a fifth annual installment of $2,000; $6,000 by a first deed of trust on real estate at No. 4202 Chestnut Street, Kansas City, Missouri; $2.000 by conveyance of six and one-half acres of land in Kansas City, Kansas; $2,000 by note executed by Wyatt as maker and by two others as indorsers. with the privilege to Wyatt to pay $1,000 cash in lieu of this note, a privilege that Wyatt exercised. Appellant Rechner by an *addendum* to the Lanier-Wyatt contract acknowledged receipt of this last cash payment of $1,000 and of the $6,000 first deed of trust on the Chestnut Street property in escrow, the contract having provided that these items of the purchase price be so deposited with Rechner.

The deal with the Farm and Home Loan Association for the purchase of the property was consummated. Lanier, respondent's straw man, took title from a corporate subsidiary of the association and on December 20, 1920, he executed the $40,000 first deed of trust to the association. He in turn conveyed the apartments to Wyatt, who with his wife on the same date, December 20, executed the second deed of trust for $12,000, and the third deed of trust for $6,000 to Buckingham (appellant) trustee for Walter Macer. a straw man. In the meantime the deal, in its evolution, took on complications as all such trades do. Respondent Buchanan had promised to E. E. Jones a half-interest in the third deed of trust on the apartments for $6,000, for the services of Jones in procuring Wyatt as a purchaser. Buchanan had had other dealings with appellants, Rechner and Buckingham. For these and for their services and outlays in the financing and consummation of the apartment house deal, appellants had a reckoning with Buchanan and Jones in the form of a written agreement between Rechner and Buckingham, appellants, and Buchanan, respondent. dated January 20, 1921, and a like agreement between Rechner. Buckingham, Buchanan and Jones, dated January 21, 1921.

The Rechner-Buckingham-Buchanan contract recited that Rechner advanced certain unstated sums to enable Buchanan, acting as representative of Lanier, to consummate the apartment house deal; that Buckingham as agent and attorney rendered services necessary to perfect the title and to complete the sale; that Rechner had an interest to the amount of $1,838 in the third deed of trust for $6,000, which was jointly owned by Buchanan and Jones; that Buchanan was indebted to Rechner on a Callaway County deal for $635.60 evidenced by his note for that amount; that Buchanan was also indebted to Rechner in the sum of $9,118 exclusive of the Callaway County debt of $635.60, but inclusive of the Buchanan-Jones debt of $1,838. Upon these premises. the three party agreement provided that the second deed of trust for $12.000 on the Paseo apartment house was to remain the property of Rechner until by the application of the payments to be made under it the debts of Buchanan to Rechner in the sums of $635.60 and $9,118 with interest at eight per cent per

annum, from January 20, 1921, were extinguished. Buchanan's obligation for $9,118 was subject to *pro rata* reductions first in the sum of $1,838 if Buchanan and Jones should pay their debt in that amount secured by the pledge of the third deed of trust for $6,000; second in the sum of $580 if Wyatt, the purchaser of the apartments, should pay at once to the Farm and Home Association the first monthly installment in that amount on the first mortgage; and third, in the sum of $700 if no liability should accrue upon an obligation in that amount, which Rechner, Buckingham and Buchanan gave to hold the Farm and Home Loan Association and its corporate subsidiary harmless against claims of other real estate agents for commissions upon the sale of the apartment house.

The Rechner-Buckingham-Buchanan-Jones agreement of January 21, 1921, was a contract of pledge with Rechner of the $6,000 third deed of trust, until the previously mentioned debt of $1,838 was paid to him. The items of this debt, mentioned in the four-party agreement were: Coal (which was in the apartment house when purchased and for which the seller claimed allowance) $288; services in settling liens and lawsuit (involved in the perfection of the title to the apartment house) $1,500; cost of executing the escrow agreement, $50. The trial below was taken up with the acts done by authority of these agreements or under color of such authority. The principal points of dispute were a controversy over the items of the debt of $9,118 due by the terms of the first contract from Buchanan to Rechner, but not detailed in that instrument, attorney's fees in the total sum of $5,800 claimed by Buckingham and a service charge of $1,250 claimed by Rechner, and other asserted liabilities of respondent Buchanan not contemplated by the agreements but charged against the collections under the mortgages.

The plot of this financial drama thickened with supplemental transactions. Exhibits dated May 10, 1921, evidenced an assignment by respondent Buchanan to appellant Buckingham of Buchanan's rights in the second and third deeds of trust on the apartment house, under the contracts of January 20 and 21, 1921, in consideration of $2,600 receipt of which Buchanan acknowledged. They also evidenced a privilege to Buchanan to buy back these assigned rights on or before May 10, 1922 (a year later), on payment by him to Buckingham of $2,760. This latter amount was charged as a loan to Buchanan on Rechner's books through which all money transactions of the parties passed. The testimony of Buckingham, Rechner and their bookkeeper was that it was a loan of $2,000 with $600 attorney's fee for Buckingham added for procuring the loan. And Buckingham, Rechner and their bookkeeper by their testimony treated Buchanan as having rights in the deposited mortgages after the day of repurchase had passed without action by Buchanan.

A later event in the relation of the parties to the apartments was

the refinancing of the loans. In time Wyatt sold the property subject to the mortgages. It passed through several hands and at last a Mr. Watson came into ownership. At that time there was $30,000 due on the first deed of trust originally for $40,000, and $7,000 due on the second and third deeds of trust, originally for $12,000 and $6,000 respectively. Watson, like the other owners, found burdensome the pay offs of $580 per month on the first deed of trust, $125 per month on the second, and $1,000 per year on the third. He therefore arranged for a new first deed of trust for $30,000 without monthly pay offs. To consummate this, he had to have the second and third deeds of trust released and replaced by a new second deed of trust for $7,000, the balance due on the old second and third. Rechner agreed to this refunding plan. He caused the old second and third deeds of trust to be released and to be replaced by the new second for $7,000 after the new first for $30,000 had been recorded. The notes secured by the new second encumbrance had the same monthly and annual pay offs as the old second and third. Buckingham testified that Buchanan agreed to the refunding of the loans. The abstract of the testimony given takes up 643 printed pages. There were 66 exhibits offered in evidence. The statement of further facts from this large record should be reserved for the examination of assignments of error.

██ IV. Appellants complain that the verdict is so excessive as to require reversal of the judgment independent of any other question in the case. Upon first impression it would appear to be an excessive verdict which gave to respondent damages in excess of $18,000 for the conversion of promissory notes for the principal sum of $18,000, respondent by his pleadings and proof having alleged that he deposited the notes with appellants as security for his old and new debts, and, having laid the conversion as of the time when the proceeds of the maturing notes had paid his debts. But we must judge the question of an excessive verdict in this case by casting aside first impressions and analyzing many figures. Let us repeat our observation that the most bitter and prolonged controversies at the trial were over the fees which appellant Buckingham charged respondent Buchanan for professional services alleged to have been rendered in the apartment house deal and other matters. These fees were entered upon appellant Rechner's books as charges against the collections upon the notes secured by the second and third deeds of trust. Therefore they should be treated as disputed items, which, in view of the amount of the verdict, the jury must be presumed to have found against appellants. The ends of justice will not be served nor the worth of this opinion enhanced by a narrative of the many pages of testimony about Buckingham's services and fees. According to him the services were contracted for and were rendered. According to

Buchanan, the only services which Buckingham rendered were in connection with the sale of the apartment house, for which services Buchanan agreed to pay Buckingham $500.

The total amount of fees in favor of appellant Buckingham and charged against respondent Buchanan's mortgage note account by appellant Rechner, who held himself out as a trustee in this matter, was $5,800.

Buchanan disputed all these charges except a fee for services in closing the deal fixed by Buchanan's evidence at $500.

The difference between these items, namely $5,300, may be presumed to have been disallowed by the jury in arriving at its verdict.

Buchanan also controverted a charge made by Rechner for his services, in the sum of $1,250.

The sum of these items disputed by Buchanan and therefore deductible from appellant's accounts in determining whether the verdict is excessive, is $6,550.

We do not overlook the fact that several of these fee charges of Buckingham and the service charge of Rechner were fully covered by agreements in writing to which Buchanan was a party. Neither do we believe that under the law applicable to the facts in evidence and to the relationships of the parties—attorney and client, trustee and beneficiary—respondent Buchanan should be held to the letter of those agreements upon the question whether the verdict is excessive.

We may further observe that Buckingham did not in fact collect from Buchanan any of those fees. The sums were entered on Rechner's books in Buchanan's account as charges against collections upon the mortgage notes. According to those books, Buckingham drew out of the account on January 4, 1924, $3,500, which Rechner's accountant entered as in full of Buckingham's share. In effect therefore the balance of Buckingham's service charges over $3,500 went to Rechner.

Now for more figures: Appellants, in support of their contention that the verdict is excessive, append to their brief four pages which appellants call a statement of the Buchanan account with Rechner and Buckingham on the apartment house deal, "disregarding all items of controversy and ruling them against the defendants and dealing with admitted items and interest thereon only." Appellants, in their reply brief, confess two errors in the statement contained in their brief. These errors are to Buchanan's benefit to the amount of $1,788. Upon reconciliation of the figures in the two briefs, appellants concede that, all controverted items being ruled against them, they owe Buchanan $6.336.40. But among the items charged against respondent in appellants' statement are Buckingham's first fee of $2,500 which is admitted only to the amount of $500 and Rechner's service charge of $1,250, which is wholly disputed. These two errors, amounting to $3,250 added to $6,336.40 makes a total of $9,586.40. The two items amounting to $3,250 erroneously included as undis-

puted in appellants' statement of the account were entered in Rechner's books as charges against Buchanan on December 4, 1920, and in the account they bear their burden of the interest charges against Buchanan. Therefore interest at eight per cent per annum from December 4, 1920, to September 14, 1929, the date of judgment, should be surcharged on $3,250. This interest added to $9,586.40 makes $11,967.83, which, after our adjustments, is the amount which appellants admit to be due to respondent if controverted items be ruled against them.

Respondent on the other hand justifies the verdict of the jury thus:

Principal of deed of trust notes ..................$18,000.00
Interest from January 20, 1921 to September 1, 1929,
 at 8% ...................................... 12,360.00

Total ...............................$30,360.00

Less amounts which respondent admits are proper charges against him with three years interest added ..... 9,487.24

Amount which respondent claims is due ................$20,872.76

Respondent errs in two respects. First the mortgage notes were not outstanding from January 20, 1921, to September 1, 1929. The second mortgage notes fell due monthly and were paid fairly promptly. The third mortgage notes fell due annually and were paid less promptly but they were not outstanding to 1929. Second error: Respondent omitted from his itemized statement of his debts, given with accrued interest as $9,487.24, an admitted payment to him by Rechner, on May 10, 1921, of $1,612, which with interest to the date of the verdict on September 14, 1929, amounts to $2,417.80. This last amount, added to respondent's stated indebtedness of $9,487.24, makes a total conceded debt from respondent to appellants of $11,905.04.

Hugh R. Ennis, an accountant called as a witness by appellants, put in evidence a many-paged, detailed financial statement which he made up from the books of Rechner and from all contracts and memoranda which appellants placed before him. Interest was calculated to December 12, 1928, upon all charges against respondent Buchanan and also upon all credits in his favor. The credits consisting of collections by Rechner upon the notes amounted to $21,898.12. We will disregard the charges since they included all controverted items. The collections were not questioned. It would seem that a computation of the amount at which a verdict in favor of respondent could be justified under the evidence is as follows:

Total collections by appellant Rechner upon notes secured by mortgages upon the Parkview Apartments, held in trust for respondent Buchanan subject to his debts, with

interest accrued to December 12, 1928 .................$21,898.12
Plus interest to September 14, 1929, date of verdict ...... 1,272.42

Total .....................$23,170.54
Less counter indebtedness conceded by respondent ....... 11,905.04

Balance for which a verdict may be justified as not ex-
cessive .........................................$11,265.50

We approached this result from the standpoint of respondent's admissions. We have already seen that, under appellants' admissions, the amount due to respondent upon uncontroverted items is $11,-967.83, when proper adjustments are made. The difference is only $702.33. We believe that $11,265.50 is the more nearly correct amount of a justifiable judgment because it is made up of respondent's admitted indebtedness and of the undisputed figures of appellants' accountant.

We do not assent to appellants' proposition that the verdict of $18,155 is so excessive as to require a reversal of the judgment independent of any other cause. Aside from precedents sustaining our view, we note that the case was tried twice, the first trial resulting in a new trial. The jury did not award punitive damages. Unguided, amid mountains of figures, charges and credits, by instructions requested by respondent, the jury gave no sign of passion or prejudice. The verdict in this case is more responsive to the curative treatment of modification than in an action for personal injuries.

■ V. Appellants requested the court to give fifteen instructions. The court gave six and refused nine. Error is assigned to each of the refused instructions. · Refused Instruction E is as follows: ''The jury is instructed that if you find and believe from the evidence that the defendant Charles H. Rechner appropriated to his own use only such part of the payments made on the $12,000 note and the series of notes aggregating $6,000, mentioned in evidence, as paid in full claims which he individually owned and which the plaintiff was obligated to pay, as you may find from the evidence, and that he made no further personal claims to said notes, but that all other collections so made were held by or for the defendant Buckingham for payment of obligations due him from plaintiff, if any, as shown by the evidence, and under an assignment of notes to said Buckingham, if any, as shown by the evidence, your verdict must be for the defendant Charles H. Rechner.''

Appellants argue in support of this assignment of error that there was in evidence an assignment of the $12,000 and $6,000 notes in consideration of $2,760 paid by respondent Buchanan to appellant Buckingham; that it was shown that appellant, Rechner, was advised of that assignment; and that it was the evidence of appellants

that appellant Rechner, made no claim to, neither did he exercise dominion over the notes referred to, except for the payment of his indebtedness and in recognition of the assignment to appellant Buckingham.

We do not so read the record. Buckingham testified that Buchanan applied to Rechner for a loan of $2,000 on the security of the deposited notes; that Rechner refused to make the loan and that Buckingham then proposed to procure the loan from Rechner to Buchanan on a guaranty by Buckingham. This was done on May 10, 1921, and the evidence shows that the transaction was entered on Rechner's books as a loan charged against Buchanan's apartment house account in the sum of $2,760 and that this sum was distributed as follows: $1,612 paid to Buchanan, $600 allotted but not paid to Buckingham for his services in procuring and guaranteeing the loan, $388 to Rechner for reasons not stated in the books, and $160 interest on $2,000 for one year. It thus appears from appellants' books, canceled checks and statements that out of $2,760 charged, Buchanan received $1,612 and Rechner retained the rest. Upon appellants' own proof, their testimony, their books of account and financial statements, Buchanan's continuing right in the notes was recognized after May 10, 1922, the limit of his reputed option to buy them back. The only evidence of any distinction made by Rechner in his recognition of the respective rights of Buchanan and Buckingham was a statement drawn off Rechner's books by his bookkeeper a few days before the trial at the request of appellants' counsel. This statement purported to leave out Buckingham's individual claims, and closed with the words: "Rechner paid out as per above statement November 30, 1924." That assertion was made for the first time in September, 1929. This assignment of error is without merit.

VI. Appellants assign error to the refusal of the court to give their requested Instruction M. This instruction directed the jury to return a verdict for appellants if the jury should find that respondent Buchanan on May 10, 1921, in consideration of $2,600 assigned to Buckingham his interest in the series of $12,000 mortgage notes and of $6,000 mortgage notes, and that Buchanan did not avail himself of the privilege given him to buy back the notes for $2,760 on or before May 10, 1922. In view of our comments on appellants' evidence in the preceding paragraph, an instruction for a verdict for appellants predicated on the assignment agreement without qualification if the jury should find that the transaction in fact was a loan properly was refused.

We have examined appellants' refused Instructions D, H, I, J, K, O, and Q, and do not find that the trial court erred in declining to give them.

648

■ VII. Appellants complain of error in Instruction C-1 given by the court of its own motion. The instruction is as follows: "You are further instructed that the court does not mean to assume as true or established any of the matters mentioned or referred to in the instructions, but leaves you to determine from the evidence whether or not such matters have been established by the evidence."

The court, at the request of appellants, gave Instruction L, which informed the jury that respondent Buchanan admitted that he owed to appellants five items aggregating $2,589.02. The appellants complain that Instruction C-1 wiped out the admissions stated in Instruction L and that the instruction being given after the close of the evidence, deprived appellants of their opportunity to give proof of the admitted items. The question is whether the jury was misled by Instruction C-1 as to the admitted items. We are of opinion that the jury was not misled and therefore that instruction C-1 is not error. [Edwards v. Collins, 198 Mo. App. 569, 199 S. W. 580; Sterr v. Wells (Mo. App.), 273 S. W. 1092; Faulkner v. Western Union Telegraph Co. (Mo. App.), 13 S. W. (2d) 1088.]

VIII. The last remaining error assigned relates to the admission of evidence by way of impeachment of appellants. We do not believe that this complaint warrants a further enlargement of this opinion. We are of opinion that this assignment should be overruled.

■ IX. This appeal was argued and submitted April 22, 1932, during the April. Term, 1932, of the Supreme Court. But owing to the complicated nature of the case, and the retirement on January 1, 1933, of two of the three judges of this division upon the expiration of their terms, the decision of the appeal has been hindered and delayed. There has been filed here a suggestion of the death of respondent, C. E. Buchanan on December 1, 1932, subsequent to the submission. In the early case of Central Savings Bank v. Shine, 48 Mo. 456, which was an action upon a written guaranty of the debt of another, the judgment of the trial court for plaintiff was reversed and the cause was remanded for a new trial. The opinion of this court closed thus: "Shine (defendant) having died since the submission of this cause, the clerk will enter up the judgment as of the last term nunc pro tunc." In the case of Sargent v. St. Louis & San Francisco Ry. Co., 114 Mo. 348, 21 S. W. 823, 19 L. R. A. 460, which was an action for personal injuries suffered by plaintiff the judgment of the court below in plaintiff's favor was ordered to be reversed and the cause remanded. But this court added (114 Mo. l. c. 360): "It having been suggested that the plaintiff has died since this cause was submitted in this court the judgment (of this court) will be entered as of the day of submission, leaving it to the parties to take such proceedings in the trial court as they may be advised is proper." It is quite clear that this

court remitted to the court below the question whether, in the state of the law at that time, plaintiff's cause of action for personal injuries survived him, the judgment, obtained during his lifetime having been reversed. The courts of appeals in cases in which plaintiffs have died after submission of the appeal have followed the practice of ordering that their judgments upon the appeal be entered as of the date of the submission. Smith v. Gately Stores, Inc. (Mo. App.), 24 S. W. (2d) 200 (action for personal injuries in which plaintiff recovered judgment and died after submission of the appeal. Judgment affirmed); Baker v. Atlas Portland Cement Co. (Mo. App.), 299 S. W. 70 (action for personal injuries in which plaintiff recovered judgment and died after submission of the appeal. Judgment reversed and remanded); Alt v. Alt (Mo. App.), 249 S. W. 153 (suit for divorce in which plaintiff husband obtained a decree and died after submission of the appeal. Decree affirmed). We shall follow this practice in the instant case.

But, if for the reasons stated in paragraph 4 of this opinion we should affirm the judgment of the court below upon condition that respondent enter a *remittitur,* that condition could not be met in the absence of the substitution in this court of the personal representative of the deceased as respondent. In Denny v. Guyton, 331 Mo. 1115, 57 S. W. (2d) 415, the Supreme Court en Banc made a most thorough and painstaking examination of an accounting upon which the judgment appealed from rested. As a result of that examination the court ordered that the judgment be modified by the subtraction of $51,399.91 from the amount of the judgment and as modified the judgment was affirmed. In the case of Kegan v. Park Bank, 320 Mo. 623, 8 S. W. (2d) 858, 15 S. W. (2d) 333, which was a suit in trover for the conversion of certain securities kept in a box in the vault of the defendant bank, plaintiff appealed from a verdict and judgment for defendant. This court in its main opinion examined the record of a long list of the securities involved, and it reversed the judgment and remanded the cause for a new trial for the reason that a certain instruction ignored the fact that $200 of Liberty bonds and certain other securities were not in plaintiff's box. Upon a motion for a rehearing this court modified its original opinion and remanded the cause with directions to the court below to enter judgment for plaintiff for the amount of the Liberty bonds as of the date of the original judgment.

Upon the foregoing precedents we shall dispose of this appeal both as to the date and the terms of our judgment. By our analysis of the financial transactions of the parties shown in paragraph 4 of this opinion the verdict and judgment for $18,155 is excessive. The judgment should not have exceeded $11,265.50. It is accordingly ordered as of April 22, 1932, the date of the submission of this appeal, that this cause be remanded with directions to the court below

to modify its judgment of September 14, 1929, so that the amount of debt and damages awarded by said judgment shall be $11,265.50. As so modified said judgment shall stand affirmed by this court. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All the judges concur.