BANK OF OAK RIDGE v. RAY B. DUNCAN and FIDELITY & CASUALTY COMPANY OF NEW YORK, Appellants.—40 S. W. (2d) 656.

Division One, June 24, 1931.

*Oliver & Oliver* for appellant, Fidelity & Casualty Company.

184

*Spradling & Dalton* for respondent.

186

FERGUSON, C.—This is a suit on a fidelity bond wherein defendant Ray B. Duncan is principal and defendant Fidelity & Casualty Company of New York, a corporation, is surety. The bond was to indemnify the Bank of Oak Ridge, a banking corporation organized under the laws of the State of Missouri and doing a general banking business at the village of Oak Ridge in Cape Girardeau County, Missouri, against any loss by reason of "any act or acts of larceny, embezzlement, fraud, dishonesty, forgery, theft, wrongful abstraction or willful misapplication" committed by the principal, Ray B. Duncan, while employed by said bank.

In 1920 it was discovered that Wash Miller, the cashier of the Bank of Oak Ridge, had embezzled funds of the bank, whereupon he was dismissed from the position as cashier, subsequently convicted of embezzlement and sentenced to the penitentiary. Having served the sentence in the penitentiary, Miller returned to the Oak Ridge community and resumed operations, in a manner hereinafter related, which resulted in his conviction for forgery and a second sentence to the penitentiary. Upon the dismissal of Wash Miller as cashier, in 1920 the defendant Duncan was employed and continued as cashier of said bank until June 16, 1925, when the bank was closed by order of its board of directors and "its affairs and assets" placed under the control of the Commissioner of Finance pursuant to subsection 3 of Section 11700, Revised Statutes 1919. The fidelity bond

sued upon, executed under date of April 8, 1920, was a continuing bond and regularly and duly renewed from year to year thereafter, the last payment of an annual premium being as of date of April 8, 1925, extending the bond for the ensuing year. The testimony is that, as cashier, Duncan not only had custody of all the assets and records of the bank and the active management of its affairs, but also did the book-keeping and made the various routine entries upon the records. On the morning of June 16, 1925, a bank examiner, representing the Department of Finance, began an examination of the Bank of Oak Ridge and early in the course of the examination, Duncan stated and admitted to the examiner that "he was short;" that "the shortage was in the cash account" and that "there was a shortage in the cash account of around $5,000." In the afternoon of the same day in a meeting with the board of directors and the bank examiner, Duncan "admitted a shortage of $10,000." It will obviate a discussion later of the objections made by the defendant, The Fidelity & Casualty Company of New York, to the admission of these statements and the assignment of error predicated thereon, to observe here that having been made by Duncan, the principal in the bond, during the term for which the surety was bound and relating to his official and guaranteed duties and concerning his transactions referable thereto, the statements were competent evidence against the surety on the bond. [St. Charles Savings Bank v. Denker; 275 Mo. 607, 205 S. W. 208.]

There was substantial evidence tending to show, and the referee in effect found, that from some time in the year 1924, Duncan, by connivance with Wash Miller and by acquiescence in Miller's manipulations, had wrongfully permitted the abstraction of assets and funds of the bank and had been guilty of various misapplications thereof, resulting in a loss to the bank in excess of the penalty of the bond; that he had concealed these transactions and operations from the officers and directors of the bank and same were first discovered in the course of the examination made by the bank examiner on June 16, 1925. The shortage in the assets of the bank revealed by the examination necessitated the closing of the bank and the placing of its "affairs and assets" in the hands of the Commissioner of Finance.

Some of the specific instances of wrongful and willful abstraction and misapplication of the funds and assets of the bank shown by the evidence are as follows:

In the examination of the bank, the bank examiner found two notes dated February 12, 1925, one for $2,000 and one for $1750, payable to the order of the Bank of Oak Ridge, thirty and sixty days after date respectively, with the name of E. J. White signed thereto as maker. These notes were not numbered and were not

entered on the discount ledger, nor filed in the note case, and Duncan stated to the examiner, on that occasion, that Miller had signed the name of E. J. White to the notes in his presence and with his knowledge; that Miller· had gotten the money represented by the notes and that was "part of the shortage."

A draft for $2500, drawn by Wash Miller on E. J. White of Memphis, Tennessee, dated November 20, 1924, was presented to the Bank· of· Oak Ridge for payment. It was returned unpaid. Miller did not have an account at the Bank of Oak Ridge during the time. of these various transactions in 1924 and 1925, and the unpaid draft when returned was not in any manner charged to him, and thereupon to cover the item, Duncan made entries upon the records showing that he had bought bonds for the bank in the amount of $2500, when in fact no bonds were purchased.

Later Miller drew another draft on E. J. White of Memphis,. Tennessee, for $5,000 and presented same for ·payment to the Bank of Oak Ridge. That draft was returned, unpaid, and upon the examination made by the bank examiner it was discovered that Duncan was carrying the draft as representing cash, or as a cash item.

In September, 1924, Albert Liddy of Oak Ridge borrowed $1,000 from the Bank of Altenburg and assigned as collateral security therefor a time certificate of deposit issued by the Bank of Oak Ridge to J. D. Bollinger in the amount of $1,000. The certificate bore the purported endorsement of J. D. Bollinger. While the application for the loan with offer of this collateral was under consideration by the Bank of Altenburg, the cashier of that bank wrote to Duncan as cashier of the Bank of Oak Ridge as follows:

"Mr. Albert Liddy of your vicinity has asked us to accommodate him with a loan to be secured by time certificate of deposit issued by your bank on July 10th, No. 11093, for $1000, in favor of J. D. Bollinger. The endorsement of Mr. Bollinger appears on the back of the certificate . . . and if you have Mr. Bollinger's signature would appreciate it if you would mail it to us in the enclosed stamped envelope in order that we may compare it with the signature appearing on the certificate."

Duncan's reply was:

"Yours of the 23rd came yesterday afternoon relative to the party, Albert Liddy of Oak Ridge, Missouri, who has applied for a loan of $1000. . . . I called Mr. Liddy this morning and he came in and brought the Time Certificate with him and I examined it, and find that it bears the signature of Mr. Bollinger correctly. Since Mr. Bollinger is a new customer to our bank and only has a Time Deposit with us therefore we cannot send a specimen of his signature along. But assuring you that the signature is O. K."

In November, 1924, Wash Miller executed and delivered his note

to the Bank of Altenburg for the sum of $1,000 in lieu of the Albert Liddy note and put up the same time certificate as collateral. When the Miller note was not paid at maturity the Bank of Altenburg sent the Time Certificate to the Bank of Oak Ridge with demand for payment and Duncan sent the Bank of Altenburg a cashier's check for the sum of $1020. The records disclose that no one by the name of J. D. Bollinger could be located, and the testimony forces the conclusion that J. D. Bollinger is a fictitious person. The cashier's check sent to the Bank of Altenburg was never entered upon the records of the Bank of Oak Ridge.

There was testimony of several other specific instances tending to establish willful misapplication of funds and assets by Duncan and there is no testimony indicating that the directors or officers of the Bank of Oak Ridge had knowledge of these transactions. The bank examiner, a deputy finance commissioner in charge of the liquidation of the bank and an accountant who had examined the books and records of the Bank of Oak Ridge, testified in detail to numerous discrepancies in the records and between the daily statements and the ledger accounts aggregating more than $20,000.

Upon plaintiff's application and over defendants' objection, the court directed a reference. The referee found for the bank for the full penalty of the bond in the sum of $10,000; that the defendant, The Fidelity & Casualty Company of New York had "vexatiously refused to pay the amount of said bond and should pay ten per cent damages on the amount of said bond, to-wit, the sum of $1,000" and "that $1,000 would be a reasonable attorneys fee for the bank and that the defendant, The Fidelity & Casualty Company of New York, should pay such attorney fee." Defendants filed exceptions to the referee's report, which were overruled. The court confirmed the report of the referee and entered judgment thereon and defendants appealed.

Appellants say that the case was not properly subject to compulsory reference and that the court committed error in directing a reference. The reference was made upon the theory that trial of the issues would require the examination of a long account. [Sec. 1426, R. S. 1919.] In determining the propriety of a reference the court should look to the pleadings and must assume that the testimony on the accounts and issues involved "will take the fullest latitude embraced within the pleadings." [McCormick v. City of St. Louis, 166 Mo. 315, 65 S. W. 1038.] The petition herein charged sixteen separate and distinct breaches of the bond. That part of the answer in the nature of a general denial put each of these items in issue and the trial of these issues required an examination of the records, files and accounts of the bank and much

190

documentary evidence, the tracing of drafts and checks and the various entries made in connection with numerous transactions extending over a period of approximately two years. The necessity of a reference in this case was, we think, apparent upon the face of the pleadings, and is demonstrated by the nature of the evidence adduced and the report of the referee. The order of reference by the trial court was, in our judgment, warranted, and appellants' complaint in that particular is without merit.

Defendant Fidelity & Casualty Company of New York alleged in its answer "that the plaintiff, Bank of Oak Ridge, fraudulently and wrongfully concealed and withheld from this defendant facts and information which were peculiarly within the knowledge of said plaintiff with reference to the condition of said bank and with reference to the condition of the loans to and accounts of the various officers and directors of said Bank of Oak Ridge, and of the loans then and there being made by the said Ray B. Duncan to other parties and that the plaintiff wrongfully concealed and withheld said information and facts from this defendant for the purpose of deceiving this defendant and inducing it to execute certificates for the extension of said surety bond." Defendants did not offer any testimony, but the appellant, the Fidelity & Casualty Company of New York, contends that the testimony offered by the plaintiff establishes the foregoing allegations of its answer, and that in 1923, prior to the renewals of the bond under which all the alleged defalcations occurred, the officers and directors of the bank were guilty of wrongdoing affecting certain assets of the bank, to-wit, three notes aggregating approximately $5500, whereby the risk assumed under the contract of suretyship was increased, and as same was not disclosed to it and annual renewals of the bond were made without knowledge of such increased risk, it was thereby discharged from liability. The following statement of the evidence concerning the three notes referred to and the acts of the directors and officers of the bank in reference thereto, shows appellant's contention to be untenable.

The bank owned a note for $1516 issued by the Minton-Thompson Motor Company. The company went into bankruptcy and nothing was realized on the note; it became an uncollectible and unavailable asset. An arrangement was entered into whereby Duncan at the direction of the board of directors substituted his note for the Minton-Thompson note and the Duncan note was paid and retired with the knowledge and approval of the board of directors out of the undivided profits of the bank. There is little, if any, difference between charging the note off and paying it with undivided profits. The appellant loses nothing and the transaction is not even remotely connected with any loss by the positive acts of "fraud, dishonesty,

wrongful abstraction, and willful misapplication'' charged against Duncan and against which only the Fidelity & Casualty Company of New York guaranteed the bank.

While Wash Miller was cashier of the bank and before the bond sued on was issued, a Dr. Blaylock executed a note for $2,000 payable to Miller, who subsequently sold and endorsed the note to the bank. After the bank became the owner of the Blaylock note, Blaylock went into bankruptcy and Miller was convicted and sent to the penitentiary for embezzlement. This note was a part of the assets of the bank at the time Duncan became cashier. Nothing could be collected on it from Blaylock and Miller was also insolvent. In 1923 Miller's wife agreed to assume this indebtedness and executed her note to the bank for $2,000 and it was substituted for the worthless Blaylock note, all of which was done with the knowledge and approval of the board of directors. Mrs. Miller's note was carried as any other asset of the bank and when the bank was placed in the hands of the Commissioner of Finance it was inventoried as an asset of the bank. It constituted no part of the shortage charged against Duncan.

The bank owned a note executed by J. J. Howard for $2,000. Howard became insolvent and the note uncollectible. Howard's father-in-law, a Mr. Statler, offered to assign to the bank two shares of stock of the Hinkle-Statler Mercantile Company, a corporation, of a par value of $1,000 per share, for the Howard note. The bank accepted the proposition and delivered the Howard note to Statler, and by an arrangement between A. M. Spradling, attorney for the bank, and the board of directors, Spradling executed his note to the bank for $2,000, which was substituted for the Howard note, and the two shares of stock were put up as collateral security therefor in order to carry this item as an asset of the bank until the stock could be sold. The Spradling note and the collateral securing the same at all times appeared and was carried as an asset of the bank, was so inventoried by the Finance Department and constituted no part of the alleged shortage.

Appellant does not suggest or point out, nor does it appear, how or in what manner these banking transactions affected the risk assumed by the surety. The surety's liability was limited, as we have stated, by the terms and conditions of the bond, to loss sustained by the bank ''by reason of any act or acts of larceny, embezzlement, fraud, dishonesty, forgery, theft, *wrongful abstraction*, or *willful misapplication* committed'' by Duncan. The surety did not undertake to guarantee the bank against the insolvency of its borrowers or depreciation of its assets by reason thereof, and the transactions mentioned in no manner affected the risk the surety did assume. The contention is not made that the directors and officers of the

192

bank, with knowledge of the wrongful acts of Duncan in permitting the abstraction of the funds of the bank through connivance with Miller and the willful misapplication of its assets in the manner alleged to have caused the loss, continued to retain him as cashier and without discovering the information to the surety accepted renewals of the bond. The evidence does not show that situation to have existed.

The appellant, the Fidelity & Casualty Company of New York, assigns as error the finding and judgment of the court assessing damages and attorney's fee against it for vexatious refusal to pay the loss on the bond. As we have stated, the bank was closed, by order of its board of directors, on June 16, 1925, and on August 5, 1925 the appellant, the Fidelity & Casualty Company of New York, was notified in writing of the "wrongful abstraction and willful misapplication" of funds of the bank by appellant Duncan. The notice signed, "Bank of Oak Ridge by A. D. Ford, President," itemized and fully set out the various charges of willful misapplication and wrongful abstraction of funds made in the petition filed herein and advised that the bank had been taken over by and was in the hands of the Commissioner of Finance. Thereafter counsel for the bank wrote the Fidelity & Casualty Company of New York several letters "trying to get an adjustment" of the claim "without suit." He was referred by the insurance company, in each instance, to their local counsel whom he consulted upon several occasions requesting an adjustment of the claim be made or undertaken, which was refused on the ground that the insurance company denied any liability whatsoever on the bond. As the insurance company persisted in its refusal to adjust or consider the claim and in its denial of any liability this action was instituted on June 10, 1926. Duncan's defalcations were first discovered by the bank examiner and the bank closed and subsequent investigations and audits fully revealed the facts thereof, all of which was communicated to the insurance company. The appellant insurance company raised no mooted or unsettled question of law upon the merits and offered no testimony and, we think, the question of vexatious refusal to pay was, in this instance, one of fact for determination by the referee and the trial court. Since there was substantial evidence to support the finding of the referee, adopted by the court, that the insurance company vexatiously refused to pay the loss on the bond and assessing damages and attorney's fee against it, we rule the assignment of error against appellant. [Fay v. Aetna Life Ins. Co., 268 Mo. 373, 187 S. W. 861; Exchange Bank v. Turner (Mo.), 14 S. W. (2d) 425.]

This action was filed in 1926 returnable to the August term of the Circuit Court of Scott County. By order of the board of direct-

ors of the Bank of Oak Ridge the "affairs and assets" of the bank were on June 16, 1925 placed under the control of the Commissioner of Finance. The testimony shows that continuously from and after the 16th day of June, 1925, and at the time this action was filed and at the time the cause was tried, the bank was in the hands of the Commissioner of Finance and in the process of liquidation and since none of the conditions prescribed by Section 11702, Revised Statutes 1919, under which the bank might resume business or recover the possession of its assets and affairs from the commissioner and resume control thereover existed, the commissioner continues in the exclusive possession and control thereof until the affairs of the bank are finally liquidated. This action was brought in the name of the Bank of Oak Ridge, a corporation, as plaintiff. The petition is in conventional form and alleges: that plaintiff "is a banking corporation duly organized and existing under and by virtue of the laws of the State of Missouri and having the capacity to sue and liable to be sued as such;" that defendant, the Fidelity & Casualty Company of New York, is a corporation; the execution and renewals of the bond; sets out the bond; charges sixteen breaches thereof and prays judgment for the penalty of the bond and damages and attorneys fee for vexatious refusal to pay same. It is not stated that the bank is in the hands of the Finance Commissioner or that the action is brought or authorized by the commissioner. The defendants filed a plea in abatement "that plaintiff has no right to institute or maintain this action" and that the bank was then and had been continuously since the 16th day of June, 1925, in the hands of the Commissioner of Finance. The plea in abatement was overruled, whereupon defendants filed answers in which they denied that at the time of the institution of the action plaintiff had capacity to sue as a banking corporation on the alleged cause of action and averring that the bank was at the time of the institution of the action in the hands of the Commissioner of Finance and that any suit upon the alleged cause of action should be instituted "in the name of the Commissioner of Finance of the State of Missouri." Under our statutes providing for the liquidation of closed banks, when the board of directors of the Bank of Oak Ridge placed the "affairs and assets" of the bank "under the control" of the Commissioner of Finance, the right to the exclusive possession and control of the "assets and property" of the bank of "whatever nature" passed to the commissioner for the purpose of liquidation. [Sub-sec. 3, Sec. 11700, R. S. 1919.] While the custody, possession and control of the assets and property of the closed bank passed to the commissioner, the title thereto did not vest in the commissioner. The relationship of the Commissioner of Finance to the assets of a bank in the process of liquidation is analogous

to the relationship of a curator to the estate of a ward. A curator, not having title to his ward's estate, cannot sue in his own name as such curator for the recovery of money or property belonging to the ward. In such case the suit must be brought in the name of the ward by the curator. [Secs. 394, 395, R. S. 1929; Judson v. Walker, 155 Mo. 166, 55 S. W. 1083; Webb v. Hayden, 166 Mo. 39, 65 S. W. 760.] This court in Bank of Darlington v. Atwood, 27 S. W. (2d) 1029, impliedly held that a suit on a chose in action belonging to a bank in the hands of the Commissioner of Finance for liquidation should be brought in the name of the bank by the Commissioner of Finance and Section 11715, Revised Statutes 1919, relating to the powers and duties of the Commissioner of Finance in the liquidation of banks under his control reads:

"For the purpose of executing any of the powers and performing any of the duties hereby conferred upon him, the commissioner may, *in the name of the delinquent corporation* . . . prosecute and defend any and all actions and legal proceedings. Any such action or proceeding, upon application of the commissioner, shall be entitled to the same preference to which an action or proceeding by or against a receiver appointed by the court is entitled in any court of the state."

This action should be in the name of the Bank of Oak Ridge by the Commissioner of Finance who is entitled to receive, control and administer the proceeds of the judgment. While there is no direct evidence that the action was instituted or authorized by the Commissioner of Finance, however both the bank examiner, who made the examination at the time the bank was closed, and who had been since that time and was at the time of the trial a bank examiner in the Department of Finance, and the deputy commissioner of finance, who first took charge of the affairs of the bank when it was placed in the hands of the Commissioner of Finance, testified as witnesses on behalf of the plaintiff and their appearance in the case as witnesses for the plaintiff and the nature of their testimony, together with the record and documentary testimony in the case, impels the conclusion that the action was in fact instituted and carried on with the knowledge and acquiescence of the Department of Finance and upon the authority of the Commissioner of Finance. Liability of the appellants on the bond was clearly established and the only defense on the merits set up in the answer, was without support in the evidence. When the facts are such as to make it proper in furtherance of justice to do so this court has plenary power in affirmance of a judgment on appeal to modify or amend such judgment, and to amend a pleading or the proceedings in the cause if the amendment or modification does not operate to the prejudice of either party to the

action and does not materially affect the merits of the action or the substantial rights of the parties or alter the issues tried. [Sec. 821, R. S. 1929; Sec. 822, R. S. 1929; Sec. 1062, R. S. 1929; Sec. 1099, R. S. 1929; Sec. 1100, R. S. 1929; Hunter v. Bank, 158 Mo. 262; Witte Iron Works v. Holmes, 62 Mo. App. 372; 4 C. J. 1155, 1169.]

In order to conform to the facts of the situation and since it cannot in any manner affect the merits of the action or alter the issues tried and determined, the title of this cause and the petition filed herein is amended to show the action to be in the name of the Bank of Oak Ridge, a corporation, by S. L. Cantley, Commissioner of Finance of the State of Missouri, as plaintiff, and the judgment is affirmed. *Sturgis* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All of the judges concur.