JAMES R. HANCOCK v. STATE HIGHWAY COMMISSION OF MISSOURI, Appellant.—149 S. W. (2d) 823.

Division One, April 18, 1941.

*Louis V. Stigall* and *Wilkie Cunnyngham* for appellant.

*James E. Carroll* and *James Potter* for respondent.

BRADLEY, C.—This is an action for damages for breach of contract. On motion of plaintiff, opposed by defendant, the cause was referred. The referee recommended that plaintiff have judgment, including interest, for $14,820.05. Both side filed exceptions which were overruled. The referee's report was approved, judgment entered as recommended, and defendant appealed.

January 30, 1934, plaintiff entered into a contract with defendant by which plaintiff was to construct four bridges, and adjacent approaches, between Berger and Washington, in Franklin County. The contract provided that plaintiff was to do all the labor and to furnish all material called for in the plans and specifications, and it was recited that the project was financed in part by the federal government under the National Industrial Recovery Act. Also, it was provided that an employment agency in Franklin County, designated by the United States Employment Service, would prepare and furnish plaintiff lists of workmen, laborers, and that when plaintiff needed men he would inform the labor agency of the number needed, and the agency would

thereupon furnish a list of qualified men, 25 per cent in excess of the number requested, and give the residence, age, and previous occupation of each man. If the labor agency failed to furnish such list, in 48 hours, then plaintiff could employ men of his own choosing. The contract provided that any man employed, and found not qualified, could be discharged by plaintiff, but replacement was to be made from the furnished lists. Both skilled and unskilled laborers were limited to 30 hours work per week, except that time out because of weather or shutdowns could be made up. The 30 hours requirement was not applicable to operators of power shovels, cranes, and concrete mixers.

It is alleged that defendant breached the contract by failure, on the part of the employment agency, to furnish lists of qualified men, and by defendants' refusal to permit plaintiff's foremen to do any manual labor. Defendant denied generally, and alleged that plaintiff waived the furnishing of names by the labor agency "because of the burden upon and difficulty to plaintiff in notifying the persons named in said lists at their homes scattered over Franklin County, Missouri, as to each time and place said men were to report for work and it was arranged between the plaintiff and the employment agency that the agency should notify such number and only such number of persons to report as there were jobs on any particular day, thus saving the plaintiff the trouble of notifying men on the lists and saving the attendance of 25% of excess of men each day over the requirements of the plaintiff." And defendant further alleged that the labor agency, "at all times informed the plaintiff and stood ready to furnish identification or permit cards to any person the plaintiff might or would select as an employee from the citizens of Franklin County or from any other county or state if and when the employment agency either did not or could not furnish sufficient qualified employees for said work."

Defendant makes the following assignments: (1) That the reference statute, Sec. 1142, R. S. 1939, 2 Ann. Stat., sec. 976, p. 1249, is in conflict with that part of Sec. 28, Art. 2 of our Constitution which provides that "the right of trial by jury, as heretofore enjoyed, shall remain inviolate;" (2) that the cause, in any event, was not one for compulsory reference; (3) that there was no substantial evidence to support the judgment; and (4) on the admission of evidence.

Plaintiff contends that defendant did not raise a constitutional question, and that, if it did, there is no merit in the point.

So far as the record shows, nothing was said as to the constitutional validity of Sec. 1142 until on the day the taking of evidence was commenced before the referee. On that day, and immediately before the taking of evidence commenced, counsel for defendant said: "Your Honor, before starting, we want to read into the record our objections to any testimony or any proceeding before the referee. We are objecting to the testimony being taken in this case, as opposed to our

rights under Article 2, Section 28 of the Bill of Rights of the Missouri Constitution. . . . We are entitled to a jury in this case."

It is stated in defendant's brief that the constitutional validity of Sec. 1142 was discussed before the trial court before the order of reference, but there is no *record* of such question being then raised. The first time that the *record* says anything about the question was, as stated, immediately before the commencement of taking evidence before the referee.

In Hansen et al. v. Duvall et al., 333 Mo. 59, 62 S. W. (2d) 732, the contention was made that the trial court erred in appointing a referee before the pleadings were made up. In ruling the point the court said (333 Mo. 59, 62 S. W. (2d) l. c. 739):

"The claim is that, at the time the referee was appointed, there was pending and undetermined two motions—one to strike out portions of defendants' answer, the other to make the answer more definite and certain. At the time the circuit court referred the case, plaintiffs did not object to the reference on the ground that the pleadings were not made up. That objection cannot be made for the first time here. This objection was made to the referee at the beginning of the taking of testimony before him, but the referee had no authority to determine the question. Such an objection, to be effective, should have been made to the court itself at the time the case was referred." [See also, State ex rel. Kimbrell v. People's Ice, Storage & Fuel Co. et al., 246 Mo. 168, 151 S. W. 101.]

There is no escape from the conclusion that defendant did not effectively raise the question on the constitutional validity of Sec. 1142, and we so rule. And we might say that Sec. 1142 does not run counter to Sec. 28 of our Bill of Rights, and that such contention is no longer an open question. [Wentzville Tobacco Co. v. Walker et al., 123 Mo. 662, 671, 27 S. W. 639; Edwardson v. Garnhart, 56 Mo. 81; Creve Couer Lake Ice Co. v. Tamm et al., 138 Mo. 385, 39 S. W. 791; Tinsley v. Kemery et al., 170 Mo. 310, 70 S. W. 691.]

■ Was the cause one for compulsory reference? Section 1142, among other things, provides that "where the parties do not . . . consent (to a reference), the court may, upon the application of either, or of its own motion, direct a reference in the following cases: First, where the trial of an issue of fact shall require the examination of a *long account* (italics ours) on either side. . . ."

"In determining the propriety of a reference, the court should look to the pleadings, and must assume that the testimony on the accounts and issues involved 'will take the fullest latitude embraced within the pleadings.' " [Bank of Oak Ridge v. Duncan et al., 328 Mo. 182, 40 S. W. (2d) 656, l. c. 658; McCormick v. City of St. Louis, 166 Mo. 315, 65 S. W. 1038; George L. Cousins Contracting Co. v. Acer Realty Co. (Mo. App.), 110 S. W. (2d) 885.]

■ It is contended that, in order to determine whether plaintiff

suffered any loss, and was entitled to recover, it was necessary to make comparison between his estimated reasonable unit labor cost, using qualified men, with his actual cost using the men furnished or sent to him by the labor agency. Plaintiff alleged that it was necessary to perform 61 separate work operations to fully perform the contract; that each operation was composed of separate units, and the evidence followed generally, as the petition alleged. And there was in evidence, and within the scope of the pleadings, 9 somewhat technical graphs, each purporting to visualize certain pertinent facts as to labor costs. Also, there was in evidence and within the scope of the pleadings, facts pertaining to the rental cost of machinery, insurance premiums paid, cost of fuel, oils, etc. There were many exhibits in addition to the graphs, and many of these were payrolls and others of a technical nature.

Without further statement, we think it is sufficient to say that the cause was one for compulsory reference.

Was there substantial evidence to support the judgment? The referee found damages as follows: For failure to furnish qualified men and in restricting plaintiff in the employment of labor of his own choosing, $9,000; for extra liability insurance premiums due to excess amount paid to labor, $755.37; for use of equipment overtime, $1500; and extra fuel and oil, $400. And these items, all interrelated, plus interest, make the amount of the judgment. The finding was for defendant on the claim that defendant refused to permit foremen to do any manual labor.

Hon. Walter S. Stillwell, an able lawyer and former judge of the circuit court, was the referee, and selected by agreement. The hearing before the referee commenced August 17, 1938, and, some recesses intervening, was finished October 3, 1938. The referee's report was filed June 9, 1939, and including the transcript of the evidence, consisted of 6 typewritten volumes, containing in all 2216 pages. However, the report, exclusive of the evidence, occupies only 48 pages in the abstract of the record, while the whole abstract consists of about 1000 pages.

The gravamen of plaintiff's case is that he was compelled to use men who were not qualified to do the work. Of this the referee says: "This question arises from the provision in the contract that 'all labor, skilled and unskilled, shall be employed from lists of available and qualified persons, furnished the contractor by the employment agency designated in the contract.' A proper determination of the question requires not only a construction of the provision quoted above, but also a consideration of the evidence offered by the parties in construing that part of the contract. The duty rested with the employment agency to furnish, upon request, a list of available and qualified persons. The reasonable implication is that in order to discharge this obligation, it devolved upon the agency to assemble a

roster of laborers within their district, with certain personal information regarding each, so that when a request came from the contractor for laborers, the agency would be in a position, on short notice, to know not only that laborers of the type called for were available, but also that they were men qualified for the work at hand. This is borne out by the fact that the list to be furnished the contractor should disclose certain information, such as the name, residence, age, and previous occupation of each person proposed for employment, grouped in the order of preference as outlined in the contract.

"There is little or no controversy about the first request for labor, except as to the question of qualifications. Plaintiff admits in his petition that at the inception of the work, he made a request for a list of laborers from which to select the workers he needed, and that a list was furnished him, within the 48-hour period, containing names 25% in excess of his requirements from which to make his selection, but he contends that with but few exceptions the men listed were not qualified to do the kind and quality of work required of plaintiff in fulfilling his contract.

"Plaintiff contends, and submitted evidence tending to show, that while he made many requests for additional and supplemental labor lists, the labor agency failed and refused to furnish any additional list or lists, and instead of lists of men, would send laborers to plaintiff, with so-called identification cards, and insists upon plaintiff giving said laborers a trial, thereby, according to plaintiff, depriving him of the right of selection, which he insists was a valuable right given him under the terms of the contract. In fact the defendant does not claim that any further lists of men were furnished plaintiff, but says that the plaintiff did not request lists except the one time heretofore alluded to, but, in the language of the second amended answer, plaintiff" waived the furnishing of names by the labor agency.

After making the statement, supra, the referee presents the question: "Were *lists* of men requested by plaintiff, or, was the contract changed in that respect, and lists waived and men alone called for and furnished?" Then the referee sets out, at length, too extensive to repeat here, the evidence on the point, and concludes: "Under the state of the evidence as we find it, we are forced to the conclusion that the greater weight of the evidence shows that there was a breach of the contract in failure to furnish *lists of laborers*, 25% in excess of the requirements, which plaintiff insists is a valuable right given to him by the contract, as it accorded him a right of selection which otherwise he would not have, . . . and that there was no waiver by the plaintiff of the obligation to furnish the lists of laborers, 25% in excess of his requirements, setting forth the information provided for in the contract. This is especially true owing to the fact that the burden of the evidence was on the defendant to establish such change

952

in accordance with the allegation to that effect in the second amended answer'' (referee's italics).

■ ''This is an action at law and the findings of fact made by the referee, when approved and confirmed by the trial court, occupy the same status on appeal as the verdict of a jury, and will not be disturbed if supported by substantial evidence.'' [Nodaway County v. Kidder, 344 Mo. 795, 129 S. W. (2d) 857, 1. c. 859, and cases there cited.] And since this is a law case, and since the judgment below was in favor of plaintiff, the evidence must be considered in the light most favorable to him, and he is entitled to the benefit of every inference of fact which may reasonably be drawn from the evidence, and defendant's evidence must be disregarded, except in so far as it may tend to aid plaintiff's case, and it can only be said that there is no substantial evidence to support a judgment in a law case when the facts in evidence and the legitimate inferences to be drawn therefrom are so strongly against the judgment as to leave no room for reasonable minds to differ. [Cento v. Security Bldg. Co. (Mo.), 99 S. W. (2d) 1. c. 5; Young v. Wheelock, 333 Mo. 992, 64 S. W. (2d) 950, 1. c. 954, and cases there cited.]

In the situation we are constrained to rule that there was substantial evidence to support the verdict.

■ Defendant complains on the admission in evidence of a letter concerning plaintiff's claim when pending before the defendant commission. The letter was written April 10, 1936, by T. H. Cutler, then chief engineer of the Commission, and was written to Hon. Louis V. Stigall, its chief counsel then and now. A copy was sent to plaintiff. The first paragraph of the letter stated that the claim was ''based on alleged failure to furnish qualified workers.'' Then the letter continues:

''I think this is true. I believe, however, that there is a natural implication that the employment agencies would cooperate with the contractor to see that he gets satisfactory men without delay, or make a waiver that the men are unavailable.

''In Mr. Hancock's case, the county employment agency, which was the authority at that time, was not disposed to so cooperate and insisted upon the contractor trying out everyone in the county who was unemployed before they would admit that they did not have the qualified workers.

''When so many counties are cooperating, the contractor would naturally expect cooperation and I do not believe he had a fair deal for that reason. It was because of this lack of cooperation by several counties, that the National Employment Service later organized the counties into districts and put competent men in charge. From these districts we have had very little trouble.''

Objection was made that the letter was a confidential communication to counsel; that the chief engineer was not present and, therefore,

there was no chance to cross-examine; and that the statements of the chief engineer were hearsay and conclusions.

That a copy was sent to plaintiff eliminates the first ground. The contract provided that "the work shall be done under the direct supervision and to the complete satisfaction of the chief engineer of the commission." There is nothing to show the source of information by the chief engineer on the subject about which he wrote. That what he said smacks of conclusions will be conceded, but so does most all the evidence for both plaintiff and defendant on the question of qualified workmen. Examples: Plaintiff's witness, Oliver McNamee, an experienced contractor in smiliar work and who did some work on the Franklin County project for plaintiff, testified:

"I don't think the laborers furnished by Franklin County and used by me on Little Boeuf and St. Johns were qualified men for that type of work. By qualified I mean a man that you could tell to do something, and he would do the right thing at the right time."

Defendant's witness, J. W. Sheets, was assistant project engineer of defendant commission, and was "on the Franklin County job from the start to the finish," except two weeks off due to sickness. On the question as to the qualification of the men who worked on the job, Sheets testified: "As to whether they were qualified to do this work, I would say they were average men that would be found on any bridge job of that type and kind. I have been on jobs where the contractor is not restricted in the selection of his labor and on jobs where he is restricted, and I would say these men compared with the average on either the restricted or unrestricted jobs. I would say that the unskilled labor on this job was the average, or a little above the average."

Where a law case is tried without a jury, "the presumption is that the court, in weighing the evidence, was governed by correct rules of law. Hence it is held that the same rules of strictness are not enforced on appeals, where the trial was by the court." [Security State Bank v. Dent County, 345 Mo. 1050, 137 S. W. (2d) 960, l. c. 964, and cases there cited. See also Sec. 1228, R. S. 1939, 2 Ann. Stat., sec. 1062, p. 1352.]

The judgment should be affirmed and it is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.