BEN VANNOY, Appellant, v. SWIFT & COMPANY, a Corporation.—No. 39881.—201 S. W. (2d) 350.

Division One, April 21, 1947.

*Roy Hamlin* for appellant.

*Fuller, Fuller & Ely* and *Ben Ely* for respondent.

■ DALTON, C.—Action under Section 16(b) of the Fair Labor Standards Act of June 25, 1938, 29 U. S. C. A., Sec. 216(b), to recover alleged unpaid overtime compensation, together with liquidated damages and attorney fees. On application of defendant, and over the objection of plaintiff, the Court ordered a reference, appointed Hon. Harrison White, a member of the Hannibal Bar, as referee, and referred the case to him "for the trial and determination of the issues of law and fact." The referee heard the cause on the issues joined, and found for defendant. Plaintiff filed exceptions thereto, which were overruled and judgment was entered for defendant in accordance with the referee's finding. Motion for a new trial was filed and "deemed denied" (not passed on within 90 days). Laws 1943, p. 389, Sec. 118. Plaintiff has appealed.

Error is assigned on the granting of the compulsory reference, and the confirmation of the referee's report.

■ A compulsory reference may be ordered "where the trial of an issue of fact shall require the examination of a long account on either side." Sec. 1142 R. S. 1939. The correctness of the account must be directly involved and whether the account is in issue in the statutory sense must be determined from the pleadings. Smith v. Ohio Millers' Mutual Fire Ins. Co., 320 Mo. 146, 6 S. W. (2d) 920, 927; Bank of Oak Ridge v. Duncan, 328 Mo. 182, 40 S. W. (2d) 656, 658. The court "must assume that the testimony on the accounts and issues involved 'will take the fullest latitude embraced within the pleadings.' " Hancock v. State Highway Commission, 347 Mo. 944, 149 S. W. (2d) 823.

The petition contained three counts. Each count charged that defendant was a corporation dealing in poultry, cream, eggs and other products, which were being shipped in interstate commerce and that plaintiff was employed by defendant in necessary and essential work

incident to the production of said products in interstate commerce. The first count covered the period of plaintiff's employment from October 24, ▮▮▮ 1938, to October 24, 1939, and during this period plaintiff alleged that he was employed for a period of 646 hours in excess of the 44 hours per week authorized under the Fair Labor Standards Act; and that he was paid for straight time only and not at overtime rates. He alleged he was entitled to time and a half pay for the overtime and asked to recover the balance due him for this period, over the rate actually paid, together with liquidated damages and a reasonable attorney fee, as provided by the act. The second count covered the period of his employment from October 24, 1939 to October 24, 1940, and sought the alleged balance due for overtime pay on 682½ hours worked in excess of 42 hours per week authorized under the Fair Labor Standards Act, together with liquidated damages and a reasonable attorney fee. The third count covered the period from October 24, 1940 to and including October 8, 1942, and sought recovery for the balance due for overtime pay on 2283 hours in excess of 40 hours per week as authorized under the Fair Labor Standards Act. On the first and second counts he alleged he had been paid at the rate of 40 cents per hour and was entitled to 20 cents per hour additional for the overtime worked. On the third count, he alleged that he had been paid at 40 cents per hour on 710½ hours of the overtime and was entitled to 20 cents per hour additional on these hours; that he had been paid 42½ cents per hour on 894½ hours of the overtime and was entitled to 21¼ cents additional on these hours; that on 631½ hours of the overtime he had been paid 45 cents per hour and was entitled to 22½ cents additional on these hours; and that on the balance of 46½ hours of overtime he had been paid 47½ cents per hour and was entitled to 23¾ cents per hour additional on these hours.

Defendant's answer, after some preliminary admissions concerning incorporation and the fact of plaintiff's employment, contained a general denial and alleged certain facts purporting to show that plaintiff's employment was not under the act, but was within exceptions thereto, as follows: (1) that plaintiff, during a portion of his time, was engaged in selling merchandise at retail in a local retailing capacity in intrastate commerce; (2) that plaintiff was engaged within the area of production in preparing and processing agricultural and horticultural commodities; and (3) that plaintiff was engaged in operating and driving a motor vehicle from Hannibal, Missouri to Keokuk, Iowa, in interstate commerce. The third defense, supra (subsequently sustained), was based upon the alleged theory that plaintiff was in "employment with respect to which the Interstate Commerce Commission had and has power, to establish qualifications and maximum hours of service, pursuant to the provisions of Sec. 304 of Title 49 of the United States Code, being part 2 of the Interstate

Commerce Act; and that such employment is excepted from the operation of Sec. 7 of the Fair Labor Standards Act by the exception granted in Sec. 13(b)(1) of the Fair Labor Standards Act." 29 U. S. C. A., Sec. 213(b)(1). Plaintiff's reply was a general denial.

Defendant's general denial (filed prior to the New Code of Civil. Procedure) put in issue the essential allegations of the petition, including the number of hours worked by plaintiff during each week of the whole period of his employment, some 206 weeks, the number of overtime hours during each week and during each particular period set out, the regular rate of pay during each period, the amount paid during each week and each period, the character of the employment and other facts. While the petition did not set out a complete account week by week of plaintiff's employment showing the number of hours worked, the amount paid per hour and the number of hours of overtime, yet it is clear from the pleadings that the burden of proof rested upon plaintiff to prove the allegations of his petition and that it could only be done in the manner stated. The correctness of the items composing the account, that is, the overtime hours worked during each week of each period and the payments made and balances due was essential to the recovery sought.

The nature of the proceeding, as one for compulsory reference or otherwise, is to be determined with reference to the state of the pleadings when the order of reference is made. Craig v. McNichols Furniture Co. (Mo. App.), 187 S. W. 793, 797; Hancock v. State Highway Commission, supra. The mere fact it appeared in advance that the ultimate decision might turn upon one or more of defendant's affirmative defenses did not render the reference erroneous. Vail v. Jacob, 10 Mo. App. 582.

Appellant concedes that "all of the matters at issue were questions of fact." Appellant further quotes from Fletcher v. Grinnell Bros., 150 F. (2d) 337, to the effect that whether or not an employee is under the Fair Labor Standards Act is purely a question of fact for the determination of the trial court. Appellant's objection to the compulsory reference is based upon two grounds: (1) that "the pleadings in the case raised no issue in reference to any account"; and (2) that plaintiff was denied a trial by jury, "as provided by the Constitution of 1875, Art. 2, Sec. 28, and by the Constitution of 1945, Art. 1, Sec. 22a."

The order of reference was entered April 17, 1944, and prior to the adoption of the Constitution of 1945, which was adopted February 27, 1945 and became effective on and after March 30, 1945. See, Sec. 3, Art. XV, Constitution of 1875, as amended November 2, 1920 and the proclamation of the Governor, March 23, 1945. Which constitution was in effect is, however, immaterial to any issue raised in the case.

Appellant insists that no matter pertaining to the hours he worked, the days he worked or the "amount of money due plaintiff, as shown by his petition," was put in issue by the pleadings; and that a case "must fall within the spirit as well as the letter of the reference law before a person can be deprived of his right to a trial by jury." Buchanan v. Rechner, 333 Mo. 634, 62 S. W. (2d) 1071, 1073; Wahl v. Cunningham, 332 Mo. 21, 56 S. W. (2d) 1052, 1057; Browning v. North Missouri Cent. R. Co., 284 Mo. 439, 224 S. W. 748, 749. Appellant argues that "there was no dispute of any kind between plaintiff and defendant" with reference to the facts shown by Exhibit "A" (hereinafter more fully explained); that the exhibit was prepared and furnished by defendant; that it was offered and used by plaintiff; and that it showed "the weeks plaintiff worked, the hours per week he worked, the rate of pay, the amount of straight time, the full amount of his weekly pay check and overtime payments, if any." Appellant further argues that "Exhibit A had no bearing on the issues whatsoever . . . because the referee found against plaintiff solely and only on the ground that . . . plaintiff was engaged in interstate commerce (sic), . . . and on that ground alone . . . was not entitled to recover under the Fair Labor Standards Act . . ." Appellant says that no long account was actually involved; and "that the issues made by the pleadings . . . were solely a question to be tried before a jury." Appellant particularly complains of "not having the right to submit to a jury" the factual matters connected with the affirmative defense which was sustained.

We think the issues made by the pleadings clearly show that a long account, within the meaning of Sec. 1142, supra, was in fact directly involved. Hancock v. State Highway Commission, supra. This fact further appeared early in the trial of the cause, when counsel announced that he expected to take up "each week and each hour." Plaintiff testified that he had his own independent record of the time he worked and of the money paid; that he had put it down each week, as worked; and that he was paid only "straight time." After some testimony concerning particular weeks, hours worked and amount of overtime, plaintiff asked defendant to produce its records with reference to these matters. The records were produced and a copy was offered in evidence as plaintiff's Exhibit A. This exhibit showed the number of hours worked by plaintiff each week during the entire period, the rate of pay and the amount paid. The only discrepancy noted by plaintiff was that "they had changed some of them over from Saturday's run to Sunday." Plaintiff never, thereafter, produced or relied upon his own records. In the course of the trial, he ultimately accepted defendant's account ▮▮▮ showing all of the matters mentioned, including overtime payments after April 16, 1942. From these figures, the number of hours of overtime, rates of payment and balances claimed to be due could be determined. The

fact that such an agreement on the evidence was reached during the course of the trial did not affect defendant's right to a reference under the issues made by the pleadings; nor did the fact that the referee ultimately found the issues in favor of defendant on its third affirmative defense affect defendant's right to a reference.

Since the cause was one for compulsory reference, appellant was not deprived of any constitutional right to a jury trial. The right of trial by jury is guaranteed by the constitution only in those cases in which, at the time of the adoption of the constitution, trial by jury could have been demanded. The words used are that "the right of trial by jury, as heretofore enjoyed, shall remain inviolate." Art. 2, Sec. 28, Const. of 1875. The right to refer a long account to a referee existed long prior to the adoption of the constitution. Edwardson v. Garnhart, 56 Mo. 81, 85. Appellant's constitutional rights were not invaded. Tinsley v. Kemery, 170 Mo. 310, 317, 70 S. W. 691; Hancock v. State Highway Commission, supra, (347 Mo. 944, 149 S. W. (2d) 823, 825).

Appellant next contends that the court erred in . . . confirming the findings of fact and conclusions of law of the referee because, under the pleadings of the defendant, setting up three affirmtive defenses, the burden of proving the affirmative defenses was on the defendant, and they failed to carry that burden."

As stated, one of the essential issues presented by the pleadings was whether plaintiff was within the coverage of Sec. 7 of the Fair Labor Standards Act, 29 U. S. C. A., Sec. 207, or was exempted therefrom by Sec. 13(b) (1), of the same act, 29 U. S. C. A., Sec. 213(b) (1), as an employee "with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of Part II of the Interstate Commerce Act (Motor Carriers), 49 U. S. C. A., Sec. 304.

Appellant cites Ispass v. Pyramid Motor Freight Corp., 152 F. (2d) 619, in support of the proposition that the burden of proof in this cause was upon defendant to show that plaintiff was within the exemption provided by Sec. 13(b) (1) of the Act. 29 U. S. C. A., Sec. 213(b) (1). Appellant insists that the record discloses that the greater portion (the most substantial part) "of plaintiff's work and duties for defendant company was not driving the truck in interstate commerce, but in working in and about the premises of Swift and Company in Hannibal." In the Ispass case, supra, it was held that the Interstate Commerce Commission, had no jurisdiction to regulate the maximum hours of an interstate motor carriers' employees who did not spend a substantial part of their time in performing duties which affected the safety of operation of interstate motor vehicles; and that only employees who spent a substantial part of their time in such duties, and were thereby subject to the jurisdiction of the Interstate Commerce Commission, should be denied recovery

for ovrtime compensation, as being exempt from the provisions of the Fair Labor Standards Act.

Appellant testified that he was employed by respondent Company at Hannibal, Missouri, and that he did "a little of everything" the company needed to have done, including cleaning up the premises, hauling refuse to the city dump, feeding and caring for poultry, keeping the coops' and batteries clean, candling eggs, testing cream, buying, selling and weighing poultry, buying and selling eggs, selling poultry feeds, filling the boiler and doing other work. This other work included operating his employer's truck on trade routes out of Hannibal to collect poultry, eggs and cream from stations at various small towns in Missouri within 70 miles of Hannibal, bringing the commodities into Hannibal for temporary storage and accumulation and then transporting these commodities to respondent's processing plant at Keokuk, Iowa. No processing was done at Hannibal, but sometimes the commodities would ▇▇▇ be kept there overnight and at other times the loads would be taken "right on up" to Keokuk, 69 miles from Hannibal. Respondent maintained two regular trade routes out of Hannibal, one to the west and the other to the south. The company had only one truck, but three employees used it, in what order does not appear. The truck covered the two routes out of Hannibal in daytime operations, while many of the trips to Keokuk were made at night. Appellant did not make all the trips locally or to Keokuk, but he worked 7 days per week. He said his Sunday's work was sometimes put down as Saturday's work. The two men employed with appellant did the same kind and class of work that he did. Appellant estimated that he made one or two trips per week to Keokuk each week in the wintertime and two or three trips each week in the summertime. He acted as "kind of substitute" on the south route out of Hannibal, but went often on the west route. The truck could cover the whole west route and go on to Keokuk in about 14 to 16 hours, if the trip was made continuously. Appellant testified that he worked 18 to 24 hours on Saturdays. He first worked in and about the place of business in Hannibal during the day and then made the trip to Keokuk at night. The Saturday night trip to Keokuk took about 14 hours, while the other trips to Keokuk during the week took 8 to 12 hours. When other drivers made the Keokuk trip, appellant helped load the truck and the loading alone might take 6 to 12 hours. The percentage of appellant's time spent in attending to his respective duties, varied as they were, does not expressly appear, but the conclusion is inescapable that a large part of his time was spent in work directly connected with the operation of the truck in the transportation of commodities in interstate commerce.

The referee found that "plaintiff's principal work was in driving the truck and collecting this produce"; that he operated the truck in transportation of commodities in interstate commerce; that "most

of his time was spent in driving defendant's truck''; that appellant was ''an employee 'with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service' ''; and that plaintiff was ''not entitled to recover in this cause under the third defense interposed by defendant.''

From a careful reading of the entire record, we have reached the conclusion that the referee's findings are fully supported by appellant's own testimony. It, therefore, appears that respondent fully sustained the burden of establishing its affirmative defense that appellant was exempted from the operation of the Fair Labor Standards Act under Sec. 13(b) (1), 29 U. S. C. A., Sec. 213(b) (1). See, also, Richardson v. Gibbons Co., 132 F. (2d) 627; Schwarz v. Witwer Groc. Co., 141 F. (2d) 341; McDaniel v. Clavin (Cal. App.), 128 Pac. (2d) 821, 826; Levinson v. Spector Motor Service, 389 Ill. 466.

Appellant further contends that his exceptions to the referee's report were overruled and the report confirmed without notice to him or his counsel, without the cause appearing upon the printed docket and without a hearing. Appellant's position is that he was entitled to notice and a hearing before a judgment could be entered against him in the cause. The record shows that the exceptions were ruled ''without any notice to the plaintiff or plaintiff's attorney of record, who was a member of the Missouri State Legislature, at that time in actual attendance thereof at Jefferson City, Missouri, and in his absence, the regular judge . . . overruled the written exceptions . . . sustained the award of the referee and rendered final judgment . . . against the plaintiff.'' Respondent concedes that ''the court, without notifying either of the parties to appear and be heard upon the exceptions, overruled all exceptions and entered judgment for defendant,'' but respondent says this was due to an oversight and that the court gave appellant a hearing on his motion for a new trial and took the motion under advisement, although the motion was not ruled within the statutory period.

The general rule with reference to a hearing on exceptions to a referee's report is stated in 53 C. J. 783, Sec. 251 as follows: ''The court cannot summarily dispose of exceptions by overruling and confirming the report without reviewing and passing upon them judicially. One duly filing exceptions to a referee's report has the right to be heard thereon, and to have the court consider and pass upon his objections, and upon such evidence as may properly be introduced in support thereof.'' Section 1158 R. S. 1939 provides that ''all exceptions to the report of the referees shall be in writing, and filed within four days, in term, after the report is filed, and shall be argued without delay.'' This section has been construed as ''showing that a hearing is contemplated before a submission.'' State ex rel. Potter v. Riley, 219 Mo. 667, 694, 118 S. W. 647. See, also, Utley

v. Hill, 155 Mo. 232, 277, 55 S. W. 1091; Hartwell v. Becker, 181 Mo. App. 408, 412, 168 S. W. 837; 45 Am. Jur., References, Sec. 39, p. 570.

█ The record shows that both plaintiff and defendant filed detailed exceptions to the referee's report; and that all of the exceptions were overruled by the trial court. The referee's report was approved and confirmed and judgment was entered, as stated. Thereafter, appellant proceeded upon the theory that the judgment, as entered, was erroneous, not upon the theory that it was void. Alleged errors were pointed out by the motion for a new trial and, in due time, an appeal was taken from the adverse judgment. Appellant has presented the cause for review in this court solely upon the assignments of error heretofore mentioned. While appellant did not have a hearing in the trial court upon his exceptions to the referee's report, he has been given a hearing in this court upon the essential matters complained of in the exceptions. We have held the order of reference was proper and that appellant was deprived of no constitutional right to a jury trial. We have further held that the referee's finding was fully sustained by the evidence; that appellant was in employment with respect to which the Interstate Commerce Commission had power to establish qualifications and maximum hours of service; and that appellant was not within the coverage of Sec. 7 of the Fair Standards Act (29 U. S. C. A., Sec. 207), because of the exemption therefrom provided by Sec. 13(b) (1) of the same Act. 29 U. S. C. A., Sec. 213(b) (1). It is further apparent from the record that the referee's finding was based upon appellant's own testimony with respect to the duties performed in his employment. Appellant was not prejudiced by the trial court's action in ruling the exceptions without a hearing, since it is clear that appellant was not entitled to recover in this cause. Upon his own testimony, he spent a substantial part of his working time in performing duties which affect the safety of operation of an interstate motor vehicle engaged in interstate commerce and in work directly connected with the transportation of commodities by motor carrier in such commerce. See, Levinson v. Spector Motor Service, 91 L. Ed. 846, and Pyramid Motor Freight Corporation v. Ispass, 91 L. Ed. 869, decided by the United States Supreme Court, March 31, 1947.

We are prohibited by Laws 1943, p. 395, Sec. 140(b) from reversing any judgment unless this court "believes that error was committed by the trial court against the appellant, and materially affecting the merits of the action." In view of the hearing accorded appellant in this court upon the essential issues presented by his exceptions to the referee's report, and in view of our findings thereon, adverse to appellant, it will be unnecessary to reverse and remand the cause for such a hearing in the trial court.

The judgment is affirmed. *Bradley* and *Van Osdol*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by DALTON. C., is adopted as the opinion of the court. All the judges concur.